## WOLF DRABINSKY, Appellant, *v.* THE SEAGATE ASSOCIATION, Respondent.

**Real property — injunction — residential parks — when association owning and developing land as residential park and selling lots for private residences retains ownership of bed of streets — when such association has authority to make and enforce reasonable rules for admission to and use of streets of such park — certain rules considered and held to be unreasonable and infringements upon rights of lot owners — when injunction may be denied in discretion of court.**

1. Where a land development company caused a tract of land to be surveyed and laid out as a residential park and had a map thereof filed in the county clerk's office with an indorsement thereon " Filed for convenience of reference only and not to dedicate streets," purchasers of lots who received deeds of conveyance which described the lots with reference to the streets shown on the map, obtained private easements therein, although the filing of the map did not result in a dedication of the streets to the public and the company still had title to the bed of the streets as the servient property.

2. Such land development company, having erected a fence around such property, conveyed it to the defendant, a membership corporation. Thereafter defendant adopted and has enforced rules which regulate and restrict the right of admission to and use of the streets in the park. Plaintiff obtained title to certain lots through mesne conveyances and now brings this action for an injunction to restrain the enforcement of these rules and regulations upon the claim that the defendant has no power to make any rules affecting access to his property. Plaintiff, and the other owners of lots, took title knowing that the title to the streets was reserved to the grantor, and that each lot was part of a property which was being developed as a residential colony. Hence, the easement of access of the plaintiff to his land is not unrestricted but is subject to such reasonable regulations of the defendant as are necessary to secure the legitimate exercise of similar easements held by the other lot owners in the park inclosure and to maintain the essential character of the inclosure as a private residential park.

3. Rules made by defendant may not limit, however, the easement granted to the plaintiff's predecessor in title nor infringe upon plaintiff's property rights. They may merely regulate the manner of the

enjoyment of his easement and the exercise of his rights where unregulated use of the streets for access to the properties abutting on the streets might tend to destroy the character of the whole property as a private residential colony. Hence, the defendant may not go beyond regulation of the right to use the streets for access and actually prevent access to such property by any person desiring to visit the property of a resident with the owner's permission, since a rule which would have that effect would diminish the owner's easement in the streets and is unreasonable.

4. The defendant may not adopt and enforce a rule which limits the number of guests the plaintiff may receive on any one day unless the defendant sees fit as a special privilege to grant a permit for special occasions, and a finding of the trial judge that the rules " are reasonable and necessary to establish the identity of the large number of persons seeking entrance into Sea Gate " embodies, as to these rules, a wrong conclusion.

5. It does not follow, however, that the plaintiff is entitled in this action to an injunction against the enforcement of the rules of which he complains. The right to an injunction is not absolute, and in view of the circumstances the court might in this action refuse an injunction against the enforcement of the rules.

6. Since the judgment herein would bar the plaintiff from maintaining an action for such relief even upon proof that this rule is being enforced to his damage, the judgment should be modified by excepting certain rules from the adjudication that the rules are reasonable and by striking out the adjudication that the plaintiff's property is bound by the acts or acquiescence of plaintiff and his predecessor in title.

*Drabinsky* v. *Seagate Association*, 209 App. Div. 827, modified.

(Submitted December 18, 1924; decided January 21, 1925.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 17, 1924, unanimously affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

*Herman S. Bachrach* for appellant. When the Norton Point Land Company laid out the land owned by it, made streets thereon, filed its map and sold lots as shown on said map, as between it and the persons to whom it sold and their successors in interest, it created an easement over said streets for the use of such lot owners for the

purpose of access to and egress from their land. (*Bissell v. N. Y. C. R. R. Co.*, 23 N. Y. 61; *Lord v. Atkins*, 138 N. Y. 184; *Reis v. City of New York*, 188 N. Y. 58; *Matter of Mayor, etc.*, 188 N. Y. 581; *T. I. Park Co. v. Tucker*, 173 N. Y. 203; *Hay v. Knauth*, 36 App. Div. 612; *White v. Moore*, 139 App. Div. 269; *Johnson v. Shelter Island Assn.*, 122 N. Y. 330; *Trustees of Watertown v. Cowen*, 4 Paige, 513.) The words on the map that the filing of the map is not intended as a dedication had the effect of preventing the streets from becoming public streets, but did not affect the rights of this plaintiff. (*Biggs v. Sea Gate Assn.*, 211 N. Y. 482.) The Sea Gate Association took its property subject to the rights of Mack and his successors in title. (*Thousand Island Assn. v. Tucker*, 173 N. Y. 203.) The right of access which plaintiff has and the easement over all streets necessary to reach his property is not personal to him, but inures to his family, servants, guests, visitors and all persons seeking access to the property with plaintiff's permission either on business or pleasure. (*Gemson v. Healy*, 100 Penn. St. 42; *Cleaves v. Braiman*, 103 Me. 154; *Comm. v. Binford*, 225 Penn. St. 93; *Tutwiler Coal Co. v. Twill*, 158 Ala. 657; *Boxendale v. North Lambeth L. & R. Club*, L. R. 2 Ch. Div. 427; *Park Assn. v. Tucker*, 173 N. Y. 203; *Tallmadge v. East River Bank*, 26 N. Y. 105; *Trustees v. Lynch*, 70 N. Y. 440.)

*Meier Steinbrink* and *Frank E. Johnson* for respondent. Plaintiff gave no proof of past interference with any of his rights, nor of prospective damage. In an injunction suit the plaintiff must show that he is being damaged or that the act which he seeks to enjoin will damage him. (*McCann v. Chasm Power Co.*, 151 App. Div. 303.) There was no dedication of the streets in Sea Gate. (*N. F. Bridge Co. v. Bachman*, 66 N. Y. 261; *Matter Robbins Ave.*, 83 App. Div. 513; *Matter of West 172d St.*, 171 App. Div. 244.)

LEHMAN, J. The plaintiff is the owner of certain premises which were originally part of a tract of land belonging to the Norton Point Land Company at Coney Island Point. The Norton Point Land Company caused this tract of land to be surveyed and plotted on a map which the company filed in the office of the clerk of Kings county in the year 1897. Prior to the filing of the map the following indorsement was placed upon it: "Filed for convenience of reference only and not to dedicate streets." In the year 1900 the Norton Point Land Company conveyed the lots now owned by the plaintiff to Jacob W. Mack from whom the plaintiff derived title by mesne conveyances. Prior to the time the land was conveyed to Mack the Norton Point Land Company had erected a fence, containing a gatehouse and entrance gates, which completely cut off and separated the property of the Norton Point Land Company from the rest of Coney Island. In July, 1899, the defendant was incorporated as a membership corporation and its objects as set forth in its articles of incorporation include provision for the "mutual comfort and convenience of its members" and provision "generally for the care, protection and maintenance of the property at Sea Gate." From July, 1899, the same month in which it was incorporated, the defendant corporation was in charge of the operation and maintenance of the fence and entrance gate described above and the original transfer in 1900 to Jacob W. Mack of the land in question was made while this condition existed. Thereafter and on or about January 1, 1901, the Norton Point Land Company granted and conveyed to the defendant the ocean beach, dock, gate entrance, stable, bathhouse and certain lots of land on its Sea Gate property and also all its right, title and interest in the land lying within the boundary lines of certain streets, shown on the map previously filed, subject, however, to any easements that might exist thereon and subject further to an easement or easements of the same character

in favor of any and all the land still remaining the property of the Norton Point Land Company. From that time on the defendant continuously operated and maintained the fence, gates, streets and sidewalks on the property and policed the same. In June, 1919, the defendant adopted rules which regulate the right of admission to the streets of the Sea Gate property and both limit and regulate the use of its streets as a means of access to the premises abutting thereon, by the owners and their families, guests and servants and by tradesmen with whom they may desire to do business. In November, 1920, the plaintiff obtained title to the lots previously owned by Jacob W. Mack. From that time he obeyed the existing regulations without written or formal protest but never became or applied to become a member of the defendant Sea Gate Association. He has now brought this action to restrain the enforcement of these regulations.

When Jacob W. Mack purchased from the Norton Point Land Company in 1900 the lots now owned by the defendant, the deed of conveyance described the lots with reference to the streets shown on the map of the Sea Gate property then on file and undoubtedly he obtained a private easement in those streets even though the filing of the map did not result in the dedication of the streets to the public. (*Biggs* v. *Sea Gate Association,* 211 N. Y. 482.) Through mesne conveyances the plaintiff now owns the land with its appurtenant easements in the streets while the defendant has title to the bed of the street, the servient property. Since the easement in the streets is a right of property in the plaintiff it may not be changed or diminished by rules and regulations made by the owner of the servient property. Any right on defendant's part to make rules and regulations must be based upon a power expressly or impliedly reserved by the owner of the servient tenement at the time of the grant of the easement. It must result from a limitation upon the easement originally granted rather

than result in the creation of a new limitation thereafter. The plaintiff's complaint in this action is based not upon the claim that the rules are unreasonable but upon the claim that the defendant has no power to make any rules at all affecting the user of the street as a means of access to the plaintiff's property by plaintiff and those desiring to visit his property.

The original conveyance created the easement by implication through the reference in the deed to the map and the streets shown thereon. It would seem that the easement is co-extensive with the purpose to which streets in such localities are usually applied (*Buffalo, L. & R. Ry. Co.* v. *Hoyer*, 214 N. Y. 26) and, therefore, also subject to any restriction which might reasonably be expected to be placed upon the user of streets in such localities. In the present case the findings establish that after the land was surveyed and plotted and the map was filed, the Norton Point Land Company caused circulars, booklets, advertisements and printed matter relative to this property to be prepared and widely distributed among the public generally and in them the company "set forth the many inviting attractions of Sea Gate as a healthful residential colony" and stated, "the Company has completed a system of macadamized roads and sewers, water and gas mains beneath them." We have held in *Biggs* v. *Sea Gate Company* (*supra*) that the limits of the implied easements in the grants of the Norton Point Land Company must be defined in the light of such representations. The original grantees from the land company knew that the property of the grantor had been surveyed and the land was being developed to create a "residential colony." They knew or had the right to assume that though the roads shown on the map were owned by the grantor and were not dedicated to the public, they were macadamized and sewer, water and gas mains were placed beneath them by the grantor for the use of those who purchased lots. Although

the deeds contained no covenant that the grantee would
obey reasonable rules and regulations made by the grantor,
its successor or assigns, yet each grantee knowing that the
title in the streets was reserved to the grantor; that the
city did not control the streets or the sewer, water or
gas mains placed therein, that each lot was part of a
property which was being developed as a residential
colony, must have understood that it was the intent of all
parties — both the vendor and the vendees — that the
property when divided and sold would continue to be
a residential colony, and the streets maintained accord-
ingly. The defendant is a membership corporation of
which the plaintiff is not a member and the plaintiff has
not agreed to abide by its rules, reasonable or otherwise;
but the defendant is also the owner of the bed of the
street and the plaintiff's rights in the street consist solely
of an easement to share in such use of the street as the
original grantee might reasonably have assumed it would
be put to. It is established by the findings that at the
time this original grantee took title the defendant already
maintained a fence and entrance gate, and kept there
" a guard or special policeman to prevent the admission
of the public and to permit the entrance only of the
property owners and those having business with them "
and it enforced regulations for admission through the
entrance gate " of only persons known to be property
owners or persons identified as having business with
property owners." It must, therefore, have been clear
to the grantee that his grantor did not intend to grant
him a right to use the street except in the manner that
a street in such a private residential colony would be
used. All the purchasers of lots in Sea Gate received
the same easement. If one person is permitted to use
the streets in such a manner as would tend to destroy
its character as a street in a private residential colony,
then all the others who purchased upon the understanding
that the use of the street might be appropriately restricted

would lose some of the benefit of their purchase. The defendant as the owner of the fee of the street holds not simply for its own benefit, subject to the easement of the plaintiff, but it holds also for the benefit of all those who have similar easements therein. It has for twenty years maintained and policed these streets for the benefit of all the property owners and has assessed the expense upon all the owners in proportion to the value of their property and it alone is in a position to formulate general rules which will preserve the rights of all parties and restrict the use of the street to the purpose for which it was granted. All the plaintiff's predecessors in title were members of the defendant corporation and as such perhaps bound to acquiesce in any rule made by the defendant within the scope of its corporate powers. Such acquiescence may not bind the defendant to similar acquiescence if the rule diminishes the easement appurtenant to plaintiff's property. The existence of some regulation even when the original grant was made, shows, however, that the plaintiff's easement of user was never intended to be unregulated and the uncontested practice of twenty years shows that the maintenance of the streets and the formulation of regulations for their use was left to the defendant, the owner of the fee of the street, acting for the benefit of all property owners. The trial justice has found as a conclusion of law " that the easement of access of the plaintiff to his land is not unrestricted but is subject to such reasonable regulations of the defendant as are necessary to secure the legitimate exercise of similar easements held by other property owners in the Sea Gate inclosure and to maintain the essential character of the inclosure as a private residential park." That conclusion is fully supported by the findings of fact.

The appellant in his brief states that " there is no question before the court as to the reasonableness of the rules. The plaintiff denies the right of the defendant to

1925.]            Opinion, per LEHMAN, J.        [239 N. Y. 321]

make any rules at all affecting his access to his property or the access of any one who desires to see him with his permission." If the plaintiff's complaint is interpreted as confined to an assertion of a right of unrestricted user of the streets for access to his land, the conclusion that the easement of access of the plaintiff to his land is not unrestricted but is subject to reasonable regulations of the defendant, necessarily leads to a dismissal of the complaint; but the court below has gone further and considered the regulations of which the plaintiff complains and has made a conclusion of law that with the exception of one rule the regulations " are reasonable and necessary to maintain the essential character of the Sea Gate inclosure as a private residential park," and has granted judgment accordingly. These rules made by the defendant may not limit the easement granted to the plaintiff's predecessor in title nor infringe upon plaintiff's property rights. They may merely regulate the manner of the enjoyment of his easement and the exercise of his rights where unregulated use of the streets for access to the properties abutting on the streets might tend to destroy the character of the whole property as a private residential colony. The original grantee of the land could not have supposed that the streets and public places of this colony were to be thrown open to the public. The physical barriers originally erected, the representations upon which the plots at Sea Gate were sold and its peculiar situation in close proximity to Coney Island, all gave notice to the purchasers that such restriction upon free admission to the property would be imposed as might be deemed necessary for the maintenance of its residential character. Some doubtless purchased in justified reliance that such restrictions would be continued, and, as conditions changed, could also be changed to meet such new conditions, none can complain if the new regulations are reasonable and adapted solely to this purpose and are equally applied, so long as they do not

[239 N. Y. 321]     Opinion, per LEHMAN, J.     [Jan.,

prevent but merely regulate access to abutting property. When they go beyond regulation of the exercise of the right to use the streets for access and actually prevent access to such property by any person desiring to visit the property of a resident with the owner's permission, they to that extent diminish the owner's easement in the streets and are unreasonable. The position of Sea Gate in close proximity to Coney Island, a place of public amusement used as an excursion center by hundreds of thousands of people, doubtless justifies regulations which in other localities might seem unreasonable. The necessity of excluding from Sea Gate casual visitors who have no business in the property seems clear, if Sea Gate is not to become like Coney Island, a place of public amusement and a center for excursionists. The right to exclude such persons under the circumstances is hardly debatable. That right can be exercised effectively only if in some way those having a right to enter the property can be identified so that the others may be excluded. All the regulations requiring cards of identification for persons living or working on the property are only means to this end and are not unreasonable so long as these persons can obtain admission also by proper identification made in some other way.

The rule which limits the admission of tradesmen has been declared unreasonable by the court below and, therefore, cannot be considered upon this appeal. There remains for consideration rule 2: " Except in the case of established and recognized boarding houses and inns, the Guards will not permit the entrance of more than ten guests on any one day to any one destination, except as a special privilege for such special occasions as weddings, funerals, receptions or entertainments, of which the Sea Gate Association, through its office, shall have been notified in advance and for which it shall have issued a permit."

The right of the plaintiff to use his own property in

any lawful manner he sees fit except as restricted by the deed of conveyance to him cannot be disputed, yet by this rule the defendant as the owner of the bed of the street assumes to limit the number of guests the plaintiff may receive on any one day to ten persons unless the defendant sees fit as a special privilege to grant a permit for wedding, funeral, reception or entertainment.  The plaintiff has the right to decide for himself how many persons he will receive in his home and whether his home should be used for weddings or funerals.  Appurtenant to his property is the right to use the streets for access to his home at least so long as it is used for lawful purposes and rule 2, if enforced, would infringe upon his property rights and give the owner of the bed of the street the right to dictate the use to which plaintiff may put his own property.  The finding of the trial judge that the rules " are reasonable and necessary to establish · the identity of the large number of persons seeking entrance into Sea Gate " embodies as to this rule a wrong conclusion.

It does not follow, however, that the plaintiff is entitled to an injunction against the enforcement of this rule in the present action.  The plaintiff purchased his property after the rules were made and with knowledge of the rules.  His complaint is that the existence of rules and regulations diminishes the value of the property rather than that any persons attempting to visit him have actually been excluded.  There is no finding that guests of the plaintiff have ever been excluded and there is no undisputed evidence, if indeed there is any evidence in the record which required such finding.  There is even some evidence from which the inference might be drawn that the rule was made *in terrorem* to cause a resident to hesitate before attempting to introduce into Sea Gate inclosure as visitors to his property persons who desired only to use the beach and streets of Sea Gate, and that the rule was never intended to be applied against those in good faith desiring to visit the plaintiff.  It

further appears in the findings that at the time of the trial the plaintiff had leased the premises to third parties for the summer months and the enforcement of this rule at least for a few months after the trial could not affect the plaintiff. The right to an injunction is not absolute and in view of these circumstances the court might in this action refuse an injunction against the enforcement of the rule. Since, however, the judgment herein would bar the plaintiff from maintaining an action for such relief even upon proof that this rule is being enforced to his damage, the judgment should be modified by excepting rule 2 as well as rule 6 from the adjudication that the rules are reasonable and by striking out the adjudication that the plaintiff's property is bound by the acts or acquiescence of plaintiff and his predecessors in title.

The judgment should be modified as indicated and as modified affirmed, without costs.

HISCOCK, Ch. J., CARDOZO, POUND, CRANE and ANDREWS, JJ., concur; McLAUGHLIN, J., absent.

Judgments modified, etc.