ERIT REALTY CORPORATION, Appellant, *v.* SEA GATE ASSOCIATION, Respondent.

(Argued June 20, 1928; decided July 19, 1928.)

*I. Maurice Wormser, Harry L. Kreeger* and *Charles Eno* for appellant.- Plaintiff was entitled to the injunction granted by the Special Term, and the modification by the Appellate Division which, in effect, destroys plaintiff's easement by subjecting it to the " regulations "

of respondent, was error. (*Whalen* v. *Union Bag & Paper Co.*, 208 N. Y. 1; *McCann* v. *Chasm Power Co.*, 211 N. Y. 301; *Drabinsky* v. *Sea Gate Association*, 239 N. Y. 321; *Biggs* v. *Sea Gate Association*, 211 N. Y. 482.) The filing of the map by the Norton Point Land Company in the office of the register of Kings county in 1897 gave the plaintiff an easement in the streets and beach shown on the map, free from the regulatory supervision of the Sea Gate Association. (*Biggs* v. *Sea Gate Association*, 211 N. Y. 482; *Weeks* v. *N. Y., W. & B. Ry. Co.*, 207 N. Y. 190; *Lord* v. *Atkins*, 138 N. Y. 184; *Stillman* v. *City of Olean*, 228 N. Y. 322; *Bissell* v. *New York Central R. R. Co.*, 23 N. Y. 61; *Donahue* v. *Keystone Gas Co.*, 181 N. Y. 313; *Haight* v. *Littlefield*, 147 N. Y. 338; *Kernochan* v. *N. Y. E. R. R. Co.*, 128 N. Y. 559; *Johnson & Co.* v. *Cox*, 196 N. Y. 110; *Ranscht* v. *Wright*, 9 App. Div. 108; 162 N. Y. 632.)

*Meier Steinbrink* and *Harold M. Kennedy* for respondent. The decision of the Appellate Division is in accord with sound principles of law. (*Crocker* v. *Manhattan Life Ins. Co.*, 61 App. Div. 226.) Plaintiff's right of access was never unlimited and unrestricted. (*Drabinsky* v. *Sea Gate Association*, 239 N. Y. 321; *Loeb* v. *Supreme Lodge*, 198 N. Y. 180; *Riverdale Realty Co.* v. *City of New York*, 153 N. Y. Supp. 742; *Cartwright* v. *Maplesden*, 53 N. Y. 622; *Lattimer* v. *Livermore*, 72 N. Y. 174; *Woodruff* v. *Paddock*, 130 N. Y. 618; *Corning* v. *Gould*, 16 Wend. 531.)

KELLOGG, J. The plaintiff is the owner of block 34 and the north half of block 35 in a tract of land known as Sea Gate. The tract comprises all the land on Coney Island point, or Norton's point, which constitutes the extreme westerly end of Coney Island. West Thirty-seventh street, a public street extending from Gravesend bay on the north to the ocean on the south, bounds the

tract on the east; Gravesend bay on the north; the Atlantic ocean on the west and south. The inner part of the tract is traversed from north to south by two laid out private streets; it is crossed from east to west by ten such streets. Beyond, to the west, is the private street, Surf avenue, which, following the curve of the ocean beach, circles to the west and north from West Thirty-seventh street. The streets crossing from east to west empty into Surf avenue on the west and into Thirty-seventh street on the east. Beyond Surf avenue, to the west and south, are other short private streets, which give access to the ocean beach encircling the point. The intersecting streets create rectangular blocks of land, forty-two in number, which have been subdivided into building lots, numbering as many as sixty to a block. Block 34, owned by the plaintiff, is at the extreme northeast corner of the tract. Block 35, the north half of which belongs to the plaintiff, is immediately south of it. These two blocks are bounded on the east by West Thirty-seventh street, and on the west by Sea Gate avenue. All the streets to which we have referred, except West Thirty-seventh street, are private streets or ways. Many houses have been erected upon the various lots in the numerous blocks of the tract, and are occupied as homes by many families. That Sea Gate forms an exclusively residential district of a high type is unquestioned.

The defendant owns title to all the private streets in Sea Gate. It owns the ocean beach and many of the building lots in the tract. For the use of residents, it long ago laid down sewers, water mains and gas mains in the streets. It provides the people of Sea Gate with water, gas and light. It has improved and maintained the roadways, and built and maintained sidewalks. Long ago it became necessary for the defendant, in order that the residents of Sea Gate might be secure in the enjoyment of their property rights, to maintain a high fence,

running along the westerly border of Thirty-seventh street, or the easterly border of Sea Gate, from Gravesend bay on the north to the ocean on the south. Recently the plaintiff, for some reason manifestly opposed to its self-interest as a proprietor of residential property, objected to the fence. Thereupon, the defendant removed that section of the fence which bounded block 34 and the north half of block 35 upon the east. In other words, the line of fence coming north from the ocean was stopped at the center line of block 35. It also erected a barrier across Sea Gate avenue, which borders the two blocks on the west, at the same center line. It also erected a barrier across Poplar avenue, which divides the two blocks, at a point on its westerly side where it intersects Sea Gate avenue. Thus the plaintiff, in its enjoyment of block 34 and the north half of block 35, was given uninterrupted access to the public street, Thirty-seventh street, but denied access to all the private streets of Sea Gate, except where such streets actually touched its properties.

The Norton Point Land Company, organized in 1892, shortly afterward acquired the Sea Gate tract. It caused the tract to be surveyed and plotted on a map. This map was filed in the office of the clerk of Kings county on June 16th, 1897. The map accurately portrays the property as presently laid out in streets, blocks and building lots. On the 31st day of August, 1898, the Norton Point Land Company deeded, among other lots, block 34 and the north half of block 35, to Theodore S. Jenkins, from whom, by mesne conveyance, the plaintiff derives title. The description of the property conveyed was by their block numbers as shown upon the filed map, to which reference was expressly made. Later, in the year 1901, the Norton Point Land Company deeded to this defendant all its interest in the streets, in the beach, and in various lots not then sold.

When the Norton Point Land Company acquired the

tract, shortly after the year 1892, it immediately began to fill and grade the land. This work was begun in 1895 or 1896 by Theodore S. Jenkins, the grantee from whom the plaintiff derives title. The easterly part of the property as far south as Mermaid avenue was filled to a depth of six or eight feet above the strip of land which now constitutes West Thirty-seventh street. An embankment, six or eight feet high, was constructed along the line of the fill. Mermaid avenue intersects the easterly line of the tract at a point distant from Gravesend bay about two-thirds of the length of the line. At this point the fill and embankment began to lower to the level of the strip of land now constituting West Thirty-seventh street. From there to the ocean on the south a high picket fence was erected. At Surf avenue a gate was set up. The embankment and the fence cut off all access to the tract from the east except through the gate. A guard was stationed at the gate who admitted to the tract, with some exceptions, only those persons having property rights therein. It clearly appears that the embankment was built and the fence installed before the summer of the year 1897. Thus the witness Mann, who was president of the Norton Point Land Company in the year 1896, and who was summoned to testify by the plaintiff, was asked: " When was the fence erected, to the best of your recollection, on the easterly boundary of this tract? " and he answered: " I should say it was in the spring of 1897." This testimony was corroborated by other witnesses and not disputed. That the fence was erected after the embankment was built is not disputed. Thus, prior to the time when Jenkins took title on the 31st day of August, 1898, and prior to the time when on July 19th, 1897, he received a contract for the lots in question, an embankment and fence were physically present upon the ground, at the easterly boundary line, to exclude the public and all persons, other than those having rights, from entrance to the

property. Later, when the strip to the east was elevated by a fill and became the public street, West Thirty-seventh street, the fence was extended north to Gravesend bay. Ever since the spring of the year 1897, until shortly before the bringing of this action, when the defendant, at the request of the plaintiff, removed that section of the fence which bordered the blocks owned by the plaintiff, free access to the property has been physically obstructed by an embankment and fence, or a fence alone. Admission to the tract has ever since been denied, by a guard stationed at a gate in the fence, to all persons who have been unable to show that they were lot owners, the guests or servants of lot owners, or were otherwise entitled, in the right of the owner, to make entrance.

Where parcels of land are the subject of a conveyance which describes them by lot or block numbers, as the same may appear upon a filed map, and the designated map shows strips of land, denominated streets, upon some of which the lots abut, undoubtedly easements in the private streets, or some of them, appurtenant to the lots conveyed, pass with the grant. (*Lord* v. *Atkins*, 138 N. Y. 184.) Whether there is appurtenant to any lot conveyed an easement in any street other than that upon which the lot has frontage; whether upon that very street the easement extends in either direction farther than an intersecting street; these are questions which we need not, and do not now decide. (See *Reis* v. *City of New York*, 188 N. Y. 58; *Matter of City of New York* [*E. 177th St.*], 239 N. Y. 119.) It has been held that, in the case of express grants of easements in existing ways, which are obstructed by fences and gates, then physically present upon the ground, the enjoyment of the easement granted is made subject to the right of the grantor reasonably to limit access and egress by maintaining the obstructions. (*Connery* v. *Brooke*, 73 Penn. St. 80; *Boyd* v. *Bloom*, 152 Ind. 152; *Garland* v. *Furber*, 47 N. H. 301; *Brill* v. *Brill*, 108 N. Y. 511.) If this be the correct doctrine in

reference to easements expressly granted, its correctness in the case of easements resting in implication must be all the more apparent. In such case the intention of the grantor to convey easements is gathered from a pictorial representation of streets. If the map portrayed fences and gates erected across them, no doubt the obstructions depicted would enter into the implication to limit the rights impliedly granted. If this result follows, where mere symbols to denote fences are used, still more surely must it be the consequence where the fences are an actuality physically present upon the ground to obstruct the user. In neither case would the obstructions tend to vary or qualify the express words of a grant, since none have been employed to make it. In the case now presented, we think that sound reasoning compels the conclusion that the plaintiff took its easement in the streets of Sea Gate subject to the right of its grantor, or its successor, this defendant, reasonably to bar access and egress by means of the fence along West Thirty-seventh street, since, when the grant was made, an obstructing fence had already been set up. However, for this conclusion, resort to general principles is unnecessary, since a precise authority compels it.

In *Drabinsky* v. *Seagate Association* (239 N. Y. 321) a conveyance of lots in the Sea Gate tract, made in the year 1900, which referred to the filed map, was under consideration. The court said: " It is established by the findings that at the time this original grantee took title the defendant already maintained a fence and entrance gate, and kept there ' a guard or special policeman to prevent the admission of the public and to permit the entrance only of the property owners and those having business with them,' and it enforced regulations for admission through the entrance gate ' of only persons known to be property owners or persons identified as having business with property owners.' It must, therefore, have been clear to the grantee that his grantor

did not intend to grant him a right to use the street except in the manner that a street in such a private residential colony would be used." It is true that reference is made in the opinion to circulars, booklets and printed matter, relating to the uses to be made of the Sea Gate property, which had been issued by the then owner, the Norton Point Land Company. However, it is apparent that interest in lands conveyed may not be effectively expanded or delimited by printed advertisements distributed prior to the conveyance by the grantor. (*Heyman* v. *Biggs*, 223 N. Y. 118.) The essential facts of the *Drabinsky* case are the facts which have been proven here. The decision made is conclusive upon the right of the defendant to maintain a fence along the easterly line of Sea Gate, reasonably to regulate admission thereto.

The judgment appealed from makes provision for the maintenance of the existing fences across Sea Gate avenue and Poplar avenue, to exclude the plaintiff's property from the protected area of Sea Gate, or, at the option of the plaintiff, the re-erection of the old fence along the easterly border of the plaintiff's lots, to continue the fence line, coming north from the ocean along the west line of West Thirty-seventh street, through to Gravesend bay, thereby to include the plaintiff's lots within the area. It also makes provision that in either case the plaintiff, and those deriving rights through it, shall have access to the streets of Sea Gate, and egress therefrom, through gates in the fences, subject, however, to regulations adopted by the defendant, whereby persons having rights may be identified and permitted to enter, while those having none may be denied entrance, and Sea Gate, thus protected from invasion by trespassers, may be maintained as a private tract of a strictly residential character. We think that the plaintiff will be protected by the judgment in all the rights to which it is entitled and that the judgment was eminently proper.

For these reasons the order should be affirmed and judgment absolute ordered against appellant on the stipulation, with costs in all courts.

CARDOZO, Ch. J., POUND, ANDREWS, LEHMAN and O'BRIEN, JJ., concur; CRANE, J., not sitting.

Ordered accordingly.