[L. A. No. 2252. Department One.—June 17, 1909.]

## W. E. VAN SLYKE, Appellant, v. ARROWHEAD RESERVOIR AND POWER COMPANY, Respondent.

DEED—GRANTING CLAUSE—INTENT TO CONVEY FEE.—A declaration of intention in a deed " to grant all that real property . . . described as follows: Being all of the land," etc., cannot be construed otherwise than as an expression of intent to grant the fee, or the entire estate, in whatever is described.

ID.—RESERVATION AND EXCEPTION DEFINED—INTENT—CONSTRUCTION.— In a strict technical sense a "reservation" in a deed is not synonymous with "exception." The former term is applied to a clause which creates some right or privilege for the benefit of the grantor in the land described as granted, and withholds it from the operation of the grant, so that the title to the thing passes to the grantee and the right or privilege concerning it is the only thing retained by the grantor. The latter term applies to something which constitutes a part of the thing described as granted, and which would pass but for the excepting clause, the office of which is to exclude it from the thing described, and the title to the thing excepted remains in the grantor. In common parlance the words are used interchangeably, and the technical meaning will give way to the manifest intent, even though the technical term to the contrary be used.

ID.—CONSTRUCTION OF DEED EXCEPTING RESERVOIR SITE AND RESERVING TIMBER—SUBSEQUENT DEED CONVEYING PROPERTY RESERVED.—The owner of the east half of a particular section of land caused a portion of it to be surveyed for a reservoir site, and its boundaries definitely ascertained and marked on the ground. He afterwards granted a portion of the land by a deed which described the property

conveyed as all that land situated in the east half of the section
"not included" in the reservoir site, and land necessary for rights of
way for ditches or conduits constituting appurtenances to the reser-
voir site, and for sand and gravel to use in building a dam, and a
certain water-right, and also "reserving" all the timber on a certain
portion of the land. Subsequently he granted to a reservoir com-
pany all the real property situated in such east half of the section
that the grantee might want for the purposes of a reservoir . . .
together with all the "reservations" recited in the prior deed. *Held,*
that in view of the situation of the parties· and the circumstances
under which the deeds were made, the words "reserving" and "res-
ervations" in the deeds should not be given their technical significa-
tion, and that by the latter deed it was the intention of the grantor
to convey all the right, title, interest, and estate he had in the half
section except what had been previously conveyed by the prior deed.

APPEAL from a judgment of the Superior Court of San
Bernardino County and from an order refusing a new trial.
Frank F. Oster, Judge.

The facts are stated in the opinion of the court.

Byron Waters, for Appellant.

Leonard & Surr, for Respondent.

SHAW, J.—This is an action to quiet title to a tract of land.
Judgment was given in the court below in favor of the defend-
ant, declaring it to be the owner of the land. The plaintiff
appeals from the judgment and from an order denying his
motion for a new trial.

The decision in the case depends on the meaning and effect
of a certain deed executed on June 2, 1891, by the plaintiff to
the Arrowhead Reservoir Company. The defendant company
is the successor in interest of the last-named company. In
order to a proper understanding of the deed it will be neces-
sary to give a statement of some previous transactions and
the conditions existing at the date of its execution as disclosed
by the record.

In 1889, the plaintiff was the owner of the entire east half
of section 23, township 2 north, range 4 west, San Bernardino
meridian, of which the land in controversy forms a part. The
land is situated in the San Bernardino Mountains, at the nar-
rows of a stream known as Huston Creek, and it includes a

flat known as Huston flat. In that year Koebig, a civil engineer, made a survey of said narrows and flat as a site for a dam and reservoir, at whose instance is not shown. He ran and marked, as the boundary of the proposed reservoir, a contour line around the flat above the proposed dam, at an elevation of 107 feet above the bed of the stream at the dam, inclosing about one hundred acres of land. Some negotiations appear to have been pending between a promoter of the Arrowhead Reservoir Company and Van Slyke for the sale of this reservoir site to the said company. On May 1, 1890, Van Slyke by quitclaim deed conveyed to the Riverside Box and Tray Company a part of this half section of land. The material parts of the description in this deed were as follows: "All that certain land situated in the east half of section 23 (etc.), not included in that certain reservoir to be built by the raising and building of a dam at the Narrows of Huston Creek in the northeast quarter of said section as surveyed by A. H. Koebig in the year 1889. Said reservoir and dam to include fifteen feet outside of the level surveyed for the high-water mark when said reservoir shall be full. Also the land required for said reservoir and dam, together with such land above the top of said dam as may be required for the purpose of obtaining ground, sand or gravel to be used in the building and maintaining of said dam, also land for ditches or conduits to convey the water of said reservoir from said dam and across said lands. Also land for ditches or conduits that may be deemed necessary to convey water into said reservoir. Also all surplus water of the east half of section 23 not used for the purpose of supplying one steam sawmill with water. Said reservoir is to be used for the purpose of storing water, and the party of the first part herein (Van Slyke) shall in nowise be liable to the party of the second part for any damages which they may sustain from the building of said dam or reservoir from the storage of water in same, or from any overflow or leakage from said reservoir. Also reserving all the timber on the west half of the northeast quarter of said section." As we understand this description the land necessary for rights of way for ditches or conduits constituting appurtenances to the reservoir site and for sand and gravel to use in building the dam, and the water-right also, were not included in the land intended to be conveyed.

The deed from Van Slyke to defendant's grantor, the Arrowhead Reservoir Company, which is the deed to be here construed, is-dated June 2, 1891, and expresses a consideration of eighty-five hundred dollars, which was actually paid to Van Slyke by the company as the price of the property transferred thereby. It purports to "grant" to said company "all that real property situated in the county of San Bernardino, state aforesaid, described as follows:—

"Being all of the land in the east one half of section twenty-three (23), township 2 north, range 4 west, San Bernardino base and meridian, that may be wanted by said party of the second part for the purpose of a reservoir, the dam of which is to be built on said land. Said reservoir site to include the quantity of land necessary therefor, and also a strip of land around the same fifteen feet above high-water mark, and to include all land in the above-described tract that may be covered with water by the erection of a dam at the Narrows of Huston Creek, on said land, together with fifteen feet above high-water mark created or stored by reason of the construction of said dam upon said land.

"Also all the water-rights owned by party of the first part that may be diverted or developed for use of filling the above mentioned reservoir save and excepting enough to supply a steam boiler for the sawmill, and domestic use for mill crew and teams. Also all rights of ways for ditches or conduits or flumes, or any other means for conveying water to said reservoir that may be necessary by subsequent surveys made by party of the second part across or through any other of the lands of party of the first part not included within said reservoir, together with all the reservations recited in certain deeds of date May 1, 1890, from party of the first part to the Riverside Box and Tray Factory." One of these deeds is the one first above mentioned.

From and after the execution of this deed, down to the beginning of this action on August 2, 1906, Van Slyke performed no act of ownership, dominion, or possession upon this land. It was wild mountain land, uncultivated, uninclosed, and unoccupied by any person, except that the Arrowhead Reservoir Company and the defendant as its successor annually leased it, together with about forty-five hundred acres of similar land near by to certain persons for a stock range, and

the stock was allowed to run at will over the entire territory, including other lands not owned by the parties. The value of this land is not shown, except that the value as assessed for taxation was fourteen hundred dollars. The rentals for the entire range of forty-five hundred acres or more was usually three hundred dollars a year. Nothing has ever been done toward the erection of a dam or the establishment of a reservoir on the land and no other survey of the premises has been made. Nothing further has been done to fix the location of the dam referred to in the deed to the Arrowhead Reservoir Company or the lines of the reservoir to be established.

It is obvious from the granting clause of the deed to the Arrowhead Reservoir Company that the intention was to convey the entire estate in the land described, and not a mere easement or privilege to use it for a reservoir and dam. A declaration of intention to "grant all that real property . . . described as follows: Being all of the land," etc., cannot be understood otherwise than as an expression of intent to grant the fee, or the entire estate, in whatever is described. "A fee-simple title is presumed to be intended to pass by a grant of real property, unless it appears from the grant that a lesser estate was intended." (Civ. Code, sec. 1105.) · The uncertainty, such as there may be, comes from the terms of the descriptive clause which does not give a definite boundary to the reservoir site mentioned.

This clause refers especially to the previous conveyance to the Riverside Box and Tray Factory, and the closing statement in the descriptive clause operates to include in the description of the property granted all the property reserved in the former conveyance. The word "reserved," in a strict technical sense is not synonymous with "exception." The former term is applied to a clause in a deed which creates some right or privilege for the benefit of the grantor in the land described as granted, and withholds it from the operation of the grant, so that the title to the thing passes to the grantee, and the right or privilege concerning it is the only thing retained by the grantor. The latter term applies to something which constitutes a part of the thing described as granted and which would pass but for the excepting clause, the office of which is to exclude it from the thing described, and the title to the thing excepted remains in the grantor.

The difference between the two terms is so slight and shadowy that in common parlance they are used interchangeably, "and the technical meaning will give way to the manifest intent, even though the technical term to the contrary be used." (13 Cyc. 674.) For illustration, it is held that a clause in a deed retaining to the grantor the right to enter upon the land granted and cut and remove the timber growing thereon, would be a reservation; whereas a clause retaining in the grantor the timber growing on the land described as granted, is technically an exception. In the first case the title to the standing trees passes to the grantee; in the second it remains in the grantor. (*Sears* v. *Ackerman,* 138 Cal. 586, [72 Pac. 171]; *Butler* v. *Gosling,* 130 Cal. 422, [62 Pac. 596]; *Rich* v. *Zeilsdorff,* 22 Wis. 522, [99 Am. Dec. 81]; *Knotts* v. *Hydrick,* 12 Rich. L. 317; *Howard* v. *Lincoln,* 13 Me. 122; *Goodwin* v. *Hubbard,* 47 Me. 595; *Martin* v. *Gilson,* 37 Wis. 360.) The so-called "reservation" of timber in the deed to the Tray Factory is therefore technically an exception of the same character as the exclusion of the reservoir site surveyed by Koebig. On the other hand, the right to the surplus water of the half section, and the right to the land necessary for sand and gravel for the use in building and maintaining the dam, which are described as among the things "not included" in the property granted to the Tray Factory, are perhaps technical reservations, rather than exceptions. All this shows that the grantor was not using the word "reserving" in its technical significance in the first deed in the clause reserving the timber, and it indicates that the word "reservations" in the last deed was there used in its popular and general sense to signify everything in or pertaining to the half section mentioned which he had not parted with by the prior conveyance.

The following rules of interpretation are particularly applicable to this deed: "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, sec. 1641.) "A grant is to be interpreted in favor of the grantee" with certain exceptions not here applicable. (Civ. Code, sec. 1069.) "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable

and lawful." (Civ. Code, sec. 1636.) "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, sec. 1643.) "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense." (Civ. Code, sec. 1644.) "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." (Civ. Code, sec. 1647.)

The circumstances under which the instrument appears to have been made strongly indicate an intention to convey all that Van Slyke possessed in the half section of land. Prior to the first deed he had been negotiating for the sale to the reservoir company of a certain part of it which was considered suitable for reservoir purposes. A survey of this site had been made and its boundaries definitely ascertained and marked on the ground. In the deed to the Tray Factory Company this reservoir site was expressly excepted and reference was made to the survey thereof previously made by Koebig. This conveyance left in Van Slyke no property or rights in the half section, save the portion thereof which had been excepted and reserved in the deed to the Tray Company. The land was entirely uninclosed and unused and was of little value except for reservoir purposes. If the reservoir had been established and had not in fact occupied the entire site as surveyed by Koebig, it is obvious that the fringe of land around the site would be of little value to Van Slyke, and would be a constant source of annoyance and dispute between him and his grantee if he had withheld it from the conveyance. If a reservoir had been established it would have been a permanent occupation of the land and if an easement therefor only had been granted, the servient estate in the land would be practically worthless. There was little inducement to the grantor to grant less than a fee simple estate, or to convey less than the entire property not included in the prior deed. In these circumstances it is extremely improbable that the parties would have arranged for the sale of any interest in the reservoir site other than the absolute fee, or for the transfer of less than the entire site surveyed. This is further confirmed

by the fact that the price paid was more than six times the value of the property as assessed for taxation. If further confirmation is necessary it is found in the conduct of the parties immediately following the execution of the last deed. For fifteen years thereafter the grantee held sole possession of the land, so far as it was occupied at all, and paid all the taxes thereon, while the grantor exercised no dominion whatever over the property, did not give it in to the assessor for taxation, and paid no taxes thereon. From all these circumstances and in view of the rules of interpretation above stated, we are of the opinion that the deed to the Arrowhead Reservoir Company should be given effect as a conveyance of all the right, title, interest, and estate of Van Slyke in the half section of land described except what had been previously conveyed to the Riverside Box and Tray Company.

This conclusion makes it unnecessary for us to consider the additional argument of the respondent to the effect that the conveyance to the reservoir company, taking the first clause in the description alone, was an instance of that class of conveyances wherein the property transferred is not definitely described, but its limits are to be ascertained by some subsequent act either of the grantor or of the grantee or by the joint act of both, whereby the boundaries are to be ascertained and determined. It may be that the deed could be upheld as a complete conveyance of all of the remaining estate in the half section upon the principles stated in the cases cited in support of this argument. (See *Hull* v. *Fuller*, 4 Vt. 199; *Smith* v. *Furbish*, 68 N. H. 123, [44 Atl. 398] ; *Dohoney* v. *Womack*, 1 Tex. Civ. App. 361, [19 S. W. 883, 20 S. W. 950] ; *Nye* v. *Moody*, 70 Tex. 434, [8 S. W. 606] ; *Crocker* v. *Crocker*, 5 Hun, 589; *Armstrong* v. *Mudd*, 10 B. Mon. (Ky.) 144, [50 Am. Dec. 545].)

It also disposes of the divers contentions of the appellant wherein he claims that the estate granted is an estate upon condition and would not vest until the dam was built; that it was an attempt to create a perpetuity, and for that reason void; that there were no words of conveyance operating upon any definite quantity of land, because it was left to the grantee to take such as "may be wanted," and that an easement in gross, only, was conveyed; in which case it is claimed that the attempt to convey it to the defendant was an aban-

donment of the right. These contentions we hold to be entirely untenable.

The judgment and order are affirmed.

Angellotti, J., and Sloss, J., concurred.