CITY OF MISSOULA, Respondent, v. MIX, Appellant.
No. 8921.
Submitted November 8, 1949. Decided January 10, 1950.
Amended January 19, 1950.
214 Pac. (2d) 212.

Mr. Ralph J. Anderson and Mr. Albert C. Angstman, both of Helena, and Mr. Merritt N. Warden, Kalispell, for appellant. Mr. Anderson and Mr. Warden argued orally.

Mr. Fred W. Schilling, Missoula, for respondent. Mr. Schilling argued the cause orally.

MR. JUSTICE BOTTOMLY:

Action by city of Missoula, a municipal corporation, against David F. Mix, for a judgment as to the extent of defendant's easement over and upon certain lands of the plaintiff, wherein defendant cross-complained. From an adverse judgment defendant appeals. Plaintiff apeals from a certain part of said judgment.

The undisputed facts are as follows: The defendant David F. Mix, on July 7, 1947, and prior thereto, was the owner of, in

possession of, and entitled to the exclusive possession of lots 20 to 27, inclusive, of block 56 of McCormick's addition to the city of Missoula, Missoula county, Montana, according to the official plat or map of said addition on file and of record in the office of the county clerk and recorder of Missoula county, Montana.

The only material evidence introduced was documentary.

By deed dated July 7, 1937, and filed for record on the 9th day of July 1937, and recorded in Volume 121 of Deed Records of Missoula county, state of Montana, David F. Mix and Ada F. Mix, his wife, conveyed to one L. R. McKenzie lots 20, 21 and 22, of block 56, McCormick's addition to Missoula, which deed contained the following reservation: "Reserving, however, to the parties of the first part, their heirs, successors and assigns, the right and easement to use all of that portion of said property above described which lies south of the north hundred (100) feet of each of said lots for the purpose of ingress and egress to and from lots 23 to 27 inclusive of said Block 56 in said addition."

By an instrument entitled quitclaim deed, dated February 28, 1938, LeRoy McKenzie and Eleanor T. McKenzie, his wife, conveyed to the city of Missoula "all the real property lying, situated and being south of that certain line, which line is parallel to and 130 feet south of the south line of West Front Street, Missoula, Montana, and the south bank of the Missoula River and between the east line of lot 20 as extended southerly and west line of lot 22 as extended southerly all in Block No. 56, W. J. McCormick's Addition to the City of Missoula according to the official plat thereof."

At the hearing it was stipulated and agreed that L. R. McKenzie and LeRoy McKenzie is one and the same person. It was further stipulated that there are not alleys across or within the area of any of the land involved.

Plaintiff introduced in evidence the deed from Mix to McKenzie and the deed from McKenzie to the city of Missoula and a certified plat of the area.

By witness Whalen, city engineer, plaintiff identified the

map or plat, the property in controversy, and that there are no alleys designated on the plat or otherwise; that the average width of alleys in the city of Missoula is 20 feet and driveways leading into private property should be about ten to twelve feet, all of which was over objection of defendant.

Plaintiff appeals basing error on the court's amended findings and conclusions and that part of the judgment which grants the easement to others than Mix. The particular language of the judgment and decree complained of by plaintiff is that part which grants the right of easement to, ''Mix, his family, tenants, servants, agents, employees, invitees and licensees, and all other persons desiring ingress and egress to and from lots 23 to 27, inclusive, with defendant's permission express or implied.''

Defendant appeals from the judgment wherein the court denied defendant's claim to an easement over all the lands embraced in lots 20, 21 and 22, lying south ''of that certain line which line is parallel to and 130 feet south of the south line of West Front Street, to the water's edge of Missoula River, all in Block 56 of W. J. McCormick's addition to the city of Missoula, Missoula county, Montana.''

There is no controversy in regard to the facts, the deeds or the land involved.

The question for determination is the extent of the rights and interests retained and reserved in the land by the defendant in the deed he and his wife executed to McKenzie, dated July 7, 1937, and as to who may use this right, interest and easement.

It should be noted that we are dealing here with a reservation by the grantor out of his own property, reserving to the grantors a right, an interest, an easement in real estate, and not a grant of or a deed to a right of way easement. Therefore the doctrine and law applicable to an easement by necessity does not apply.

A reservation in a deed is some right, interest or estate retained by the grantor in the granted premises. It creates a right and privilege for the benefit of the grantor in the land described as granted and withholds it from the operation of the grant. 9 Cal. Jur., ''Deeds,'' sec. 187, p. 323.

"An easement is an appurtenance to land (Smith v. Denniff, [24 Mont. 20, 60 Pac. 398, 50 L. R. A. 737, 81 Am. St. Rep. 408]) and constitutes an interest, in real property under all the authorities. (Northern Pac. Ry. Co. v. Carland, 5 Mont. 146, 3 Pac. 134)." Mannix v. Powell County, 60 Mont. 510, 513, 199 Pac. 914, 915.

"The 'character of a way, whether it is public or private, is determined by extent of the right to use it, and not by the extent to which that right is exercised'." Butte, A. & P. Ry. Co. v. Montana U. Ry. Co., 16 Mont. 504, 41 Pac. 232, 31 L. R. A. 298, 50 Am. St. Rep. 508; Kipp v. Davis-Daly Copper Co., 41 Mont. 509, 110 Pac. 237, 241, 36 L. R. A., N. S., 66, 21 Ann. Cas. 1372.

An easement is a property right protected by constitutional guaranties against the taking of private property without just compensation. A private right of way is an easement and is land. The United States is liable to the owner of an easement appurtenant in a suit condemning the fee of the servient estate. U. S. v. Gossler, D. C., 60 F. Supp. 971, 974; U. S. v. Welch, 217 U. S. 333, 30 S. Ct. 527, 54 L. Ed. 787, 28 L R. A., N. S., 385, 19 Ann. Cas. 680. See Sections 14 and 27, Article III of our State Constitution.

"The modern conception of conveyancing, however, seeks to ascertain the intent of the grantor from a consideration of the entire instrument, without regard to the position of the several clauses, and, in order to give effect to such intent when ascertained, an exception will be construed as a reservation, and vice versa." Marias River Syndicate v. Big West Oil Co., 98 Mont. 254, 264, 38 Pac. (2d) 599, 601.

The Supreme Court of North Carolina in interpreting a reservation in a deed which reserved to the grantors, their heirs and assigns, the right to hunt on any of the described lands as may remain uncleared and uncultivated, and the right to protect the game on such land against trespass, stated that if the right is enjoyed by reason of holding certain other estate, it is regarded in the light of an easement to such estate, that the grantors have

the right to enter upon the uncleared and uncultivated lands in question, in person, and with invited guests, and had the power to protect the game thereon. See, Council v. Sanderlin, 183 N. C. 253, 111 S. E. 365, 32 A. L. R. 1527.

It cannot be questioned that the grantor, being the owner of the fee, before giving his deed had a right to go and come as he will, using any part or all of the land for such purpose, and to invite, authorize, or grant permission, express or implied to anyone to transverse the land as he saw fit, or to exclude therefrom anyone entering thereon unlawfully. Such right the grantors never parted with, never conveyed, but by the reservation, retained. See Worcester v. Smith, 117 Me. 168, 103 A. 65.

"The extent of a servitude is determined by the terms of the grant * * *." Sec. 6754, R. C. M. 1935.

The grantor, as was his privilege, by reserving a right, interest, ▆ estate or easement in his land at the time and in his conveyance, may limit or extend the burden, as he desires on the servient estate so long as it is not unlawful, and upon acceptance the grantee and his successors in interest take subject to the restrictions imposed. See Richardson v. Clements, 89 Pa. St. 503, 33 Am. Rep. 784, 787.

The grantors herein, owning all the land, could by their conveyance, have limited and restricted their right, interest and easement in the land conveyed to a definitely described smaller portion of the land, but they evidently desired and intended to be untrammeled and unrestricted in the use of the servient estate. The language used by the grantor could hardly be more explicit, clear and unambiguous, "reserving, however, to the parties of the first part, their heirs, successors and assigns, the right and easement to use *all* of that portion of said property above described which lies south of the north hundred (100) feet of *each of said lots* for the purpose of ingress and egress to and from lots 23 to 27, inclusive, of said Block 56 in said addition." (Emphasis supplied.) Obviously the words used were to distinguish the reservation from one of easement of undefined width or area and to make certain the area reserved.

The language used in this reservation when read in connection with the whole instrument manifests the intention of the grantors in distinct and intelligent terms. Such language needs no interpretation.

By statutory rule the language of a reservation in a grant is ▮ to be interpreted in favor of the grantor, which is a different rule from that which existed at common law and under many other state statutes.

"A grant is to be interpreted in favor of the grantee, except that a reservation in any grant * * * is to be interpreted in favor of the grantor." Sec. 6852, R. C. M. 1935; Mineral County v. Hyde, 111 Mont. 535, 111 Pac. (2d) 284; Sears v. Ackerman, 138 Cal. 583, 586, 72 Pac. 171.

Where the language of a reservation in a grant is clear, certain and unambiguous, it must be given effect as written. The court may not defeat or destroy such right by rewriting a conveyance.

The owner of a reserved easement may use it to the full use of ▮ the right retained. The owner of the servient tenement may make use of the land in any lawful manner that he chooses, which use is not inconsistent with and does not interfere with the use and right reserved to the dominant tenement or estate.

Whatever is excluded from the grant by exception or reservation remains in the grantor as of his former right or title and never passes to the grantee.

It is a rather specious argument to say that the plaintiff city ▮ may not use this land as it desires to do, because of the burden imposed by the reservation and therefore the burden must be lightened. One may not invade the property rights of another and justify or attempt to excuse or explain such legal wrong because of the need. The answer thereto is that the plaintiff knew of the limitations imposed on this property at the time it purchased, so it is assumed the city received what it paid for. If it desires the full unrestricted fee another conveyance is called for.

The grantors reserved the right and easement on the servient

estate to the parties of the first part, being David F. Mix and Ada L. Mix, his wife, their heirs, successors and assigns, for the purpose of ingress and egress to and from lots 23 to 27 inclusive, of said block 56. This right they already had and by reserving such right it continued as before. No one would say that before the defendant executed said conveyance, defendant Mix, his wife, family, tenants, servants, agents, employees, invitees and licensees, and all other persons desiring ingress and egress to and from lots 23 to 27, with defendant's permission, express or implied, might not traverse and use this property, having retained this right for such use, such right continues.

The rule is well stated, ''While a private way may not be used by the public generally or by any one having no better right than the general public, the owner of such a way is not limited to its use by himself, but it may be used by his family, by tenants occupying the land with his authority, by his servants, agents, or employees in conducting his business, by persons transacting business with him, or by guests for social purposes, except in cases where the right of way is created by express agreement and the user is restricted by the terms of the agreement. Where a way is appurtenant to an estate, it may be used by those who own or lawfully occupy any part thereof, and by all persons lawfully going to or from such premises, whether they are mentioned in the grant or not. No persons belonging to the classes mentioned are trespassers. However, until the owner of the way extends an invitation either actual or by implication, no third person can claim the benefit of the way, the owner of the way being entitled to exclude strangers from its use if their use impedes the free exercise of his right of passage.'' 28 C. J. S., Easements, sec. 90, page 769, and cases cited. See, Siedler v. Waln, 266 Pa. 361, 109 A. 643, 8 A. L. R. 1363.

It has been stated that, ''The reference to a private alley distinguishes it from a public alley, the care and maintenance of which is charged on the public, but does not define or limit the character of the use which those persons entitled to a right of way over the private alley shall make of it. Nor is the owner of

the way limited to its use by himself in propria persona. The way belongs to him as his property. All persons having occasion may, with his permission, transact business with him by passing to and fro over the way. He may use it, by his servants and employees, in conducting his business.'' Shreve v. Mathis, 63 N. J. Eq. 170, 52 A. 234, 237.

When it appears from the clear terms of a grant that it was the intent of the grantor to reserve a right, in the nature of a servitude or easement, in the property granted, for the benefit of other land owned by the grantor, no matter in what form such purpose may be expressed, whether it be a condition, or covenant, or reservation, or exception, such right, if not against public policy, will be held to be appurtenant to the land of the grantor, and binding on that conveyed to the grantee, and the right and burden thus created and imposed will pass with the lands to all subsequent grantees. See 6 Thompson on Real Property, Par. 3505, p. 740; Coudert v. Sayer, 46 N. J. Eq. 386, 19 A. 190, and cases cited; 17 Am. Jur., ''Easements,'' sec. 29, p. 942; Knotts v. Summit Park Co., 146 Md. 234, 126 A. 280; Greenwalt v. McCardell, 178 Md. 132, 12 A. (2d) 522, 525.

''In the absence of express restrictions in that regard in the grant, it sees that all persons who can be regarded as having permission, express or implied, to enter on the dominant tenement, may use a way for the purpose of access to such tenement and of egress therefrom. Consequently members of the family of the dominant owner, his servants and employees, his guests, and tradesmen and other persons with whom he does business, may do so. Such persons are not guilty of trespass in using the way, and the owner of the. easement would, it seems, have a right of action in case there was an interference with the use of the way by a member of one of these classes.'' 3 Tiffany, Real Property, 3d Ed., sec. 803, p. 326; Commonwealth v. Richardson, 313 Mass. 632, 48 N. E. (2d) 678, 146 A. L. R. 648; Siedler v. Waln, supra; Drabinsky v. Sea Gate Ass'n, 239 N. Y. 321, 146 N. E. 614.

Therefore as to the issues raised by the defendant's appeal the

judgment is reversed and as to the issues raised by the plaintiff's appeal the judgment is affirmed.

The court was right in extending the easement to those enumerated in the amended decree and judgment, but erred in restricting the easement as it did as to area. We of course agree that the south boundary of defendant's reservation does not, under any theory, extend to the south boundary of the Missoula River. The cause is remanded with instructions to enter judgment for defendant David F. Mix in conformity with this opinion.

ASSOCIATE JUSTICES FREEBOURN, ANGSTMAN and METCALF, concur.

MR. CHIEF JUSTICE ADAIR:

I dissent.

First. The evidence in this record is wholly insufficient to show title in either plaintiff or defendant to any property claimed by either in this suit.

The only evidence in the record is that introduced by the plaintiff city. It consists of: (1) The warranty deed from defendant to McKenzie; (2) the quit claim deed from McKenzie to the city; (3) an unauthenticated contour map; and (4) five pages of testimony elicited from two witnesses.

The defendant introduced no evidence whatever, but rested his case on the interpretation to be accorded the "reservation" clause contained in the warranty deed from defendant to McKenzie so placed in evidence by plaintiff.

Second. Should sufficient additional evidence be adduced to establish title in the city to the claimed strip of land, 90 feet wide and possibly an eighth of a mile or more in length, then defendant's claimed reservation of the right and easement to use for the purpose of ingress and egress to and from defendant's city lots in block 56 of W. J. McCormick's addition, if not invalid for indefiniteness, would but accord to defendant the right to select and use a right of way of reasonable width and

such as would be reasonable under the circumstances for access to and from defendant's property. The reservation should not be so interpreted as to effectively defeat the right of the owner of the fee to the use and enjoyment of his property nor should it be construed to reserve in the grantor the right to at any and all times use any and all parts of said strip of land from top to bottom as and for a roadway.

The city's complaint avers that it is the owner and entitled to the possession, use and enjoyment of that certain piece or parcel of land lying and being within the corporate limits of the city of Missoula and more particularly described as: "All the real property lying, situated and being South of that certain line, which line is parallel to and 130 feet South of the South line of West Front Street in the City of Missoula, Montana, and *the South bank of the Missoula River* and between the East line of Lot 20 *as extended southerly,* and the West line of Lot 22 *as extended southerly,* all in Block 56 of W. J. McCormick's Addition to the City of Missoula, according to the official map or plat thereof on file and of record of the office of the County Clerk and Recorder of Missoula County, Montana." (Emphasis supplied.)

Lots 20, 21 and 22 in Block 56 of W. J. McCormick's addition are each 30 feet in width so that the combined width of the three lots from the east boundary line of lot 20 to the west boundary line of lot 22 measures 90 feet. The north boundary line of each lot is the south boundary line of Front street. The south boundary line of each lot is as indicated upon and "according to the official map or plat" of W. J. McCormick's addition "on file and of record in the office of the County Clerk and Recorder of Missoula County."

There is no evidence in the record before this court that lots 20, 21 and 22 in block 56 of said addition "according to the official map or plat thereof on file and of record" extend as far as "130 feet South of the South line of West Front Street" or that any of said lots "according to the official map or plat thereof" is as much as 130 feet in length or that any part or portion of

the strip of land claimed by the city and so described in its complaint is situate within the boundaries of said lots 20, 21 and 22 in said block 56 of W. J. McCormick's addition "according to the official map or plat thereof."

The city's complaint describes and seeks to quiet title to a strip of land 90 feet in width and of unmeasured and unknown length which strip lies south of a line parallel to and 130 feet south of the south line of Front street and extends to "the South bank of the Missoula River."

The strip of land so claimed by the city (the corners being represented by the letters G. H. I and J) and some of the adjacent area is here sketched.

Point A represents a drive-in restaurant located in lots 23 and 24 owned by defendant Mix. Point B represents a gas and oil service station located on the north 100 feet of lots 20, 21 and 22 owned by McKenzie. The corners of the strip of land *claimed* by the city are represented by the letters, G, H, I, and J. The north boundary line of the *claimed* strip is represented by the letters G-H, the south boundary line being the south bank of the Missoula River by the letters I-J, the east boundary line by the letters H-J and the west boundary line by the letters G-I.

The corners of the parcel owned by McKenzie are represented by the letters C, D, G, and H, the letters C-D representing the north boundary line of lots 20, 21 and 22 in block 56 in W. J. McCormick's addition and the letters G-H representing the south boundary line of the portion of said lots now claimed by McKenzie.

The letters E-F represent a line parallel to and 100 feet south of the north boundary line (C-D) of lots 20, 21 and 22, being also the south line of Front Street. The letters K, L, M, and N represent the Parkway Bridge which extends in a northeasterly southwesterly direction across the Missoula River.

The city alleged the south boundary of the strip involved to be the south bank (I-J) of the Missoula river. The north boundary of the strip is alleged to be a line (G-H) parallel to and located 130 feet south of the south boundary line of Front Street.

FRONT STREET

Two parallel lines (G-I and H-J) 90 feet apart constitute the lateral boundaries of the strip. To locate such lateral boundary lines resort must be had to certain surveyed and measured lines marked, described and shown on the official map or plat of W. J. McCormick's addition to the city of Missoula and particularly block 56 in said addition, all laid out, marked and situate to the north of the Missoula river.

To locate and determine the east boundary line (H-J) of the strip involved, the east boundary line of lot 20 in block 56 in W. J. McCormick's addition as such line is shown to have been surveyed, measured and laid out, and as it is marked on the official plat of such addition is *extended southerly* until such line crosses the Missoula river and reaches the south bank thereof.

To locate and determine the west boundary line of the strip of land in question the west boundary line of lot 22 in block 56 in W. J. McCormick's addition as such line is shown to have been surveyed, measured and laid out and as it is marked on the official plat of said addition, is *extended southerly* until such line crosses the Missoula River and reaches the south bank of said river.

Thus is the strip of land here involved bounded: On the *north* by a line (G-H) parallel to and 130 feet south of the south line of Front street; on the *south* by the south bank of the Missoula river (I-J) and on the *east* and *west* (H-J and G-I) by straight lines, as *extended southerly* from the east boundary line of lot 20 and from the west boundary line of lot 22 until such lines *as extended* reach the south bank of the river.

In the prayer to his answer and cross-complaint the defendant Mix seeks a decree adjudging that defendant's title to said easement for the purpose of ingress and egress aforesaid, "be quieted as against the claims and pretentions of the plaintiff."

The plaintiff city's claim of title to the said strip of land rests upon three conveyances dated (1) March 10, 1937, (2) July 7, 1937, and (3) February 28, 1938, respectively.

(1) On March 10, 1937, Thomas N. Marlowe, trustee of the estate of Kate H. McCormick, deceased, by deed conveyed to

David F. Mix eight vacant city lots, being lots 20 to 27 inclusive, in block 56 in W. J. McCormick's addition to the city of Missoula, Montana, according to the official plat, together with the tenements, hereditaments and appurtenances to the same.

Mix, the grantee, acquired title to lots 20 to 27 inclusive in block 56 in W. J. McCormick's addition as said numbered lots are indicated, marked, measured, described and shown on the official plat of said addition, which plat defines and fixes the limits, boundaries, location and measurements of the lots each being 30 feet wide, each fronting on Front street and each extending southerly therefrom for the respective distances shown on the official plat. There is no testimony or documentary evidence that the south boundary line of any of said lots is located or shown on the official plat to be as distant as 130 feet south of the south line of Front street.

(2) On July 7, 1937, David F. Mix and wife, first parties, by warranty deed, conveyed to L. R. McKenzie, second party, three of the aforesaid vacant city lots so situate in the city of Missoula and described in said deed as:

"Lots Twenty (20), Twenty-one (21) and Twenty-two (22), of Block Fifty-six (56), of McCormick's Addition to the City of Missoula, *according to the official map or plat of said addition* on file and of record in the office of the County Clerk and Recorder of Missoula County, Montana.

"Reserving, However, to the parties of the first part, their heirs, successors and assigns, the right and easement to use all of that portion of said property above described which lies south of the north hundred (100) feet of each of said lots for the purpose of ingress and egress to and from Lots 23 to 27, inclusive, of said Block 56 in said Addition.

"Together with all and singular the hereinbefore described premises, together with all tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and also the estate, right, title, inter-

est, right of dower and right of homestead, possession, claim and demand whatsoever, as well in law as in equity, of the said parties of the first part, of, in or to the said premises and every part and parcel thereof, with the appurtenances thereto belonging. To have and to hold, all and singular the above mentioned and described premises unto the said party of the second part, and to his heirs and assigns forever." (Emphasis supplied.)

At the trial the defendant Mix was called to the witness stand by plaintiff. On his direct examination concerning his intentions in executing the above deed to McKenzie, the defendant Mix, without objection, testified: "Our intentions were, which was the plan we have made, we would sell 90x100." However, the fact remains that McKenzie, the grantee, *bought* lots 20, 21 and 22 in block 56 of McCormick's addition "according to the official map or plat of said addition on file and of record" and he *took* under and "according to the official map or plat of said addition" so on file and of record, subject only to the reservation in the grant.

There is nothing in the deed from Mix to McKenzie to indicate that the parcel conveyed, being lots 20, 21 and 22 in block 56 of said addition extends as much as 130 feet south from the north boundary line of said lots, being the south line of Front street, or to indicate that the south boundary line of said lots is "the south bank of the Missoula River," or to indicate that the lateral boundary lines of said lots were to be "extended southerly" from their south termini as shown on the official plat without and beyond the south boundary of block 56 and without and beyond the south boundary line of W. J. McCormick's addition to "the south bank of the Missoula River."

(3) Notwithstanding, on February 28, 1938, L. R. McKenzie and wife assumed to "remise, release and forever quit claim unto" the city of Missoula, and its assigns, the following described property in said city, to-wit: "All the real property lying, situated and being south of that certain line, which line is parallel to and 130 feet south of the south line of West Front Street, Missoula, Montana, and *the south bank of the Missoula*

*River* and between the east line of lot 20 *as extended southerly* and the west line of lot 22 *as extended southerly* all in block No. 56 W. J. McCormick's Addition to the City of Missoula *according to the official plat* thereof together with all the tenements, hereditaments and appurtenances thereunto belonging, and the reversion and reversions, remainder and remainders, rents, issue and profits thereof; and also all the estate, right, title and interest in said property, possession claim and demand whatsoever as well in law as equity, of said parties, of, in or to the said premises and every part and parcel thereof.'' (Emphasis supplied.)

*Reservation.* "* * * an exception excludes some part of the thing from the conveyance and the title to that part remains in the grantor by virtue of his original title, while a reservation creates a new right out of the subject of the grant and is originated by the conveyance.'' 16 Am. Jur., Deeds, sec. 298, p. 608, note 5. See also Van Slyke v. Arrowhead Reservoir & Power Co., 155 Cal. 675, 102 Pac. 816.

If the clause "reserving" the right and easement to use for the purpose of ingress and egress in the deed from Mix to McKenzie be construed an "exception" then any portion of lots 20, 21 and 22 "which lies south of the north hundred (100) feet" of said lots was not conveyed or transferred to the grantee, McKenzie and the title to all such portion continued and remained in Mix, the grantor, in which case McKenzie acquired *no title* whatever to such southerly portion of said lots and, having nothing to convey, the quit claim deed which he executed on February 28, 1938, passed no title to the city. See Powell v. Big Horn Lou Line Ditch Co., 81 Mont. 430, 263 Pac. 692; 26 C. J. S., Deeds, sec. 137, page 439 and sec. 140, page 450.

On the other hand, if the "reserving" clause in the deed to McKenzie created a mere easement over the portion of said lots lying south of the north 100 feet thereof, then title to such reserved portion passed to McKenzie subject to such easement and he could convey such title to the city subject to the reservation.

Coon v. Sonoma Magnesite Co., 182 Cal. 597, 189 Pac. 271, holds that a reservation of a strip of land for a road, the description of which is too indefinite to be a valid exception of the fee, will be construed as a *reservation of an easement,* which need not be described with certainty, and that if the description in the reservation is indefinite, it nevertheless gives the owner of the *servient* estate the right to designate a *reasonable* way, and if he fails to do so the owner of the *dominant* estate may. Ballard v. Titus, 157 Cal. 673, 110 Pac. 118, holds that such right of way, so reserved by grantor, must, *when* selected be *reasonable* under all the circumstances for *such purposes.* This case is cited with approval in Parker v. Swett, 40 Cal. App. 68, 180 Pac. 351, 352. See, also, 9 Cal. Jur., secs. 186-190, pp. 322-327; 16 Am. Jur., Deeds, sec. 298, p. 607, and cases cited in notes 5 to 9; also sec. 304, p. 611; 26 C. J. S., Deeds, secs. 139 and 140, pages 446 and 450.

The reservation in the deed from Mix to McKenzie is indefinite and uncertain in that it fails to disclose what, if any, portion of the lots lies south of the north 100 feet thereof. If only 30 feet of the parcel be located there, as the deed from McKenzie to the city would seem to indicate, then it would appear that Mix in reserving all the land south of the north 100 feet had in mind the use of but a 30-foot strip as a right of way for ingress and egress to his lots 23 to 27. On the other hand, if the tract south of the north 100 feet of said lots extended southerly therefrom a considerable distance such as 100 or 200 feet, or more, it would show an *unreasonable width* for a right of way, and under the authorities cited above, the court could limit it to a *reasonable* width for such right of way to enable persons and vehicles to go to and from lots 23 to 27.

In Pritchard Petroleum Co. v. Farmers Co-Op Oil & Supply Co., 121 Mont. 1, 190 Pac. (2d) 55, 62, this court held that a description of the land is necessary in an instrument relied on as color of title; that the description of the land is the *sine qua non* of color of title and that: ''The purpose of the rule of 'color of title' is that the instrument or document relied on as

'color' shall describe the land so that the extent of the claim of an occupant may be determined.'' Clearly under the rule adopted in that case the instruments under which the parties to this suit claim fail to show color of title and the proof adduced on the trial is wholly insufficient to show title in either party to the strip of land here involved.

The only evidence in this case is that introduced by the plaintiff city. The plaintiff's evidence consists of the testimony of the then city engineer, Patrick J. Whalen, and of the defendant David F. Mix and three documentary exhibits, to-wit: (1) Warranty deed of July 7, 1937, from Mix and wife to McKenzie (plaintiff's exhibit 1); (2) quit claim deed of February 28, 1938, from McKenzie and wife to the city (plaintiff's exhibit 2); and (3) a purported copy of an alleged original tracing of a contour map indicating the various elevations of a portion of block 56 in the McCormick addition and purporting to have been drawn from a survey made September 4-6, 1947, by or under the supervision of one Charles E. Riggs, a former city engineer (plaintiff's exhibit 3). This exhibit is not certified nor does it purport to be a true or correct copy of the original plat of the W. J. McCormick addition, nor a true or correct copy of that portion of said addition here involved, as shown by the original plat of said addition made and drawn to scale in September 1882 and on January 3, 1883, filed in the office of the county clerk and recorder of Missoula county. See: 32 C. J. S., Evidence, sec. 698, page 592 and State v. Campbell, Utah, 208 Pac. (2d) 530, at page 533. The witness Whalen did not make the survey of September 4-6, 1947, which apparently supplied the data from which the purported tracing was made. Nor did he testify that the tracing had been checked with the original plat or a correct copy thereof, or that it in any wise or manner conforms to the plat referred to in the various deeds and by reference to which the lots were conveyed. The purported tracing (exhibit 3) was by the witness Whalen, who testified that the exhibit ''is a copy of an original tracing * * * which I *found* a short time after I took office. Q. This is a tracing from your office, is it? A. No,

this is the print from an original tracing." The entire testimony of the witness Whalen comprises but three pages of the record including the interrogatories, answers, objections of counsel and the court's rulings.

The testimony of the witness Mix covers but two pages of the record and is to the effect: That his lots were vacant until about 1947 when he constructed a building near Front street on lots 23 and 24; that about 1941 or 1942 a gasoline service station was built on McKenzie's lots 20, 21 and 22, located northwest of the Parkway bridge; that it is 258.3 feet from the northeast corner of McKenzie's lot 20 to the northwest corner of the bridge and that in making the conveyance to McKenzie, his intentions were to merely "sell 90x100." During the direct examination of Mix his counsel stated to the court: "Mr. McKenzie owns 100 feet this way, 90x100, and when Mix conveyed the reservation applied to everything from this point to the bridge."

In the light of such testimony, representations and reservations, it became highly important to ascertain and determine exactly what property and area was included in the conveyance of March 10, 1937, to Mix from the trustee of the estate of Kate H. McCormick, deceased, of lots 20 to 27 inclusive in said Block 56 in McCormick's addition and exactly what property and area passed to McKenzie in the conveyance of July 7, 1937, from Mix, purporting to convey lots 20, 21 and 22 "of Block Fifty-six (56) of McCormick's Addition to the City of Missoula, according to the official map or plat of said addition on file and of record in the office of the County Clerk."

What does the official plat of the addition show as to the south boundary or length of lots 20, 21 and 22 in block 56 of McCormick's addition which Mix conveyed to McKenzie "according to the official map or plat of said addition"?

If Lots 20, 21 and 23 are but 100 feet or less in length measured from the north to the south boundary lines thereof, then there was no land to which Mix' reservation of "the right and easement to use" could or did apply. If said lots are but 130 feet or less in length or depth measured from the south boun-

dary line of West Front Street to the south boundary line of the lots "according to the official plat," then the city acquired no land by virtue of the quit claim deed which McKenzie executed to it on February 28, 1938.

Where does the official plat place the south boundary line of the lots involved?

Certainly there is no evidence in the record before us that such official plat shows the south boundary line of any of such city lots to be located on "the south bank of the Missoula River" as is claimed by the city in its complaint.

But neither the official plat of W. J. McCormick's addition nor any properly authenticated copy thereof was offered or received in evidence.

During the trial counsel represented to the court that the original plat of McCormick's addition "was lost years ago, thirty or forty years ago" but that there is a certified copy of the plat book "downstairs" which the court may consult if it "wants to refer to the official plat." It also appears that at the request of counsel the trial judge viewed the premises but such information as he thus obtained and from proceeding to the county clerk's office and there inspecting the certified copy of the plat is not before this court on the appeal. Had counsel anticipated that this case would come here on appeal he doubtless would have stated for the record that if any member of this court wants to refer to the official plat of block 56 of W. J. McCormick's addition, he may consult the records and files of this court in City of Missoula v. Bakke, or better still, refer to the plat incorporated in the writer's dissenting opinion therein shown in City of Missoula v. Bakke, 121 Mont. 534, 198 Pac. (2d) 769, at page 779.

The court may take judicial notice of official acts of the judicial department. See subdivision 3 of section 10532, R. C. M. 1935; Chapter 60, Laws of 1937; Golden v. Northern Pac. R. Co., 39 Mont. 435, 447, 104 Pac. 549, 34 L. R. A., N. S., 1154, 18 Ann. Cas. 886; City of Los Angeles v. Abbott, 217 Cal. 184, 17 Pac. (2d) 993; Nordin v. Bank of America, 11 Cal. App. (2d) 98, 52 Pac. (2d) 1018; Roberts v. Roberts, 81 Cal. App. 499, 253

Pac. 1112; Hammell v. Britton, 19 Cal. (2d) 72, 119 Pac. (2d) 333; Stewart v. Phoenix Nat. Bank, 49 Ariz. 34, 64 Pac. (2d) 101; Hislop v. Rodgers, 54 Ariz. 101, 92 Pac. (2d) 527; Hughes v. Union Oil Co., 60 Ariz. 130, 132 Pac. (2d) 640; Vandre v. Trachte, 244 Wis. 233, 12 N. W. (2d) 48; 31 C. J. S., Evidence, sec. 50, page 625, notes 49, 50 and 51. Compare: City of Billings v. Pierce Packing Co., 117 Mont. 255, at pages 262, 263, 161 Pac. (2d) 636, at page 638; Cover v. City & County of Denver, Colo., 211 Pac. (2d) 830.

The deed from Mix to McKenzie does not describe lots 20, 21 and 22 as extending to either bank of the river,—in fact it gives no definite description of the land that Mix intended to convey, so alleged to be situate south of the north 100 feet of said lots. That is, there is nothing in the deed from Mix by which Mc-Kenzie acquired such title as he had to warrant him in his quit claim deed to the city to describe the lots as extending to the south bank of the Missoula River.

At the close of plaintiff's case and after the city had rested, defendant moved for dismissal of plaintiff's case on various grounds including failure of proof to entitle the city to any relief herein. The denial of such motion by the trial court is assigned as error by defendant. In my opinion the case should be dismissed as to both plaintiff and defendant for there is not sufficient evidence in the record before us to entitle either party to a decree.

"In order to be entitled to claim relief, the complainant must present clear or satisfactory proof of title; if the showing in this respect leaves the judicial conscience in doubt, relief will be denied." 44 Am. Jur., Quieting Title, sec. 83, p. 69. The plaintiff must succeed upon the strength of his own title and not on the weakness of his adversary. Borgeson v. Tubb, 54 Mont. 557, 172 Pac. 326; Smith v. Whitney, 105 Mont. 523, 74 Pac. (2d) 450; Aronow v. Bishop, 107 Mont. 317, 86 Pac. (2d) 644.

As heretofore pointed out the lateral boundary lines of the strip of land involved are of unknown length but apparently they are sufficiently elastic to permit of being *extended souther-*

*ly* and stretch to and across a powerful stream of varying moods and widths, long termed the Hell Gate, to the ever changing "south bank of the Missoula River" so arbitrarily seized upon as and for the south boundary of the strip in question.

Here both the plaintiff and the defendant would take the definite and fixed south boundary line of lots 20, 21 and 22, in block 56 as such lots and block are shown in and upon the official plat of W. J. McCormick's addition and arbitrarily shove such boundary line completely out of and beyond the limits of block 56 and out of and beyond the limits and boundaries of the McCormick addition itself, pushing such line first to the water's edge on the north bank of the river, thence to the thread of the stream and thence across the channel to the south bank of the river. This remarkable feat accomplished, the parties to this law suit would then by means of legal legerdemain, graft enough rubber to the surveyed and definitely fixed lateral boundary lines of the lots as described and shown upon the official plat to permit such lateral lines so afflicted with "growing pains" to be stretched and "extended southerly" until they too would reach out to the water's edge, cross the channel and then rest their exhausted water soaked termini on "the south bank of the Missoula River."

What principle or rule of law sanctions such highhanded methods of increasing one's estate and enlarging his domain? What, under the deeds passing title and the law of this state, is to determine the south boundary line of the strip of land here in dispute?

1. Shall a definite survey line, to-wit, the *south boundary line* of lots 20 to 22 in block 56 in W. J. McCormick's addition, as marked and shown upon the official plat thereof and which is also the south boundary line of said block 56 as well as of the entire McCormick addition be accepted as the south boundary of said lots?

By the references made in the various deeds of conveyance to the official plat of the addition such plat with all its notes, measurements, lines and descriptions became as much a part of

the deed as though such descriptive features were written out at length upon the face of the deed itself. City of Billings v. Pierce Packing Co., 117 Mont. 255, 161 Pac. (2d) 636; Ming v. Foote, 9 Mont. 201, at page 222, 23 Pac. 515; Vaught v. McClymond, 116 Mont. 542, 155 Pac. (2d) 612; Pittsmont Copper Co. v. Vanina, 71 Mont. 44, 227 Pac. 46; Phelps v. Pacific Gas & Electric Co., 84 Cal. App. (2d) 243, 190 Pac. (2d) 209; 16 Am. Jur., Deeds, sec. 273, p. 593, notes 7 and 8; 6 Thompson on Real Property, Rev. Ed., sec. 3371, p. 577, note 61, and sec. 3373, note 69, p. 579.

2. Shall *a monument,* namely *the north bank* of the Missoula River be accepted as the south boundary of the strip?

3. Shall *a second monument,* namely *the north edge of the Missoula River* at low-water mark be accepted as the boundary? See section 6771, R. C. M. 1935.

4. Shall *a third monument,* namely *the middle or thread* of the Missoula River be taken as the boundary? See City of Missoula v. Bakke, 121 Mont. 534, 198 Pac. (2d) 769.

5. Shall *a fourth monument,* namely, *"the south bank of* the Missoula River" be determined upon as the south boundary of the strip of land?

The trial court's decree assumes to quiet plaintiff's title in fee "to all that part of lots No. 20, No. 21 and No. 22, block No. 56, W. J. McCormick's Addition" lying south of and between "that certain line which is parallel to and 130 feet south of the south line of West Front Street * * * *and the south bank of said Missoula River * * *"* thus accepting such *south bank* as the lawful south boundary of said city lots originally created, laid out and located wholly within said addition and entirely to the north of the river.

What statute, decision, text, rule or principle of law is there to authorize the ferrying of W. J. McCormick's addition from the north side of the Hell Gate, Clark's Fork of the Columbia or Missoula River where it was surveyed, measured, laid out and located in the year 1882, across such turbulent stream and de-

positing it, or at least its south boundary, on "the south bank of said Missoula River?"

Should the law allow the owners of city lots within the boundaries of an addition located wholly to the north of the river to move the south boundary line of their lots southerly across the river to the south bank thereof, what happens to the north boundary lines of lands of others located wholly to the south of the river? Does the law allow the owners of lands located on the south side of the river the corresponding privilege of transporting the north boundary line of their lands northerly across the river to the north bank thereof? What happens when, during such moving process the owners of the lands to the north of the river meet in mid-channel the owners of the lands to the south of the river. Who then stop the ferrying of the boundary lines and exactly where do they stop?

Such new land as has been developed on the north side of the river by accretion or by a man-made dump *since* Mix's deed to McKenzie of July 7, 1937, is not involved in this case. It is only lots 20 to 22 as they existed *on* July 7, 1937, and particularly that portion thereof, if any, which lies south of the north 100 feet that is here involved. Any increase or addition to the south portion of lots 20 to 22 by accretion or by city dumping *after* Mix acquired title to such lots and upon the conveyance to McKenzie rested in Mix under the rule adopted by the majority of the court in City of Missoula v. Bakke, supra.

The "reserving" clause in the warranty deed from Mix to McKenzie is simply a "reservation" wherein the entire fee simple title to all the land described in the deed passed to McKenzie but subject to Mix's easement for a reasonable right of way of reasonable width as so reserved by Mix for ingress and egress to his lots, provided however that it first be established by competent evidence that lots 20 to 22 so conveyed to McKenzie were more than 100 feet in length or depth. In its decree the trial court fixed the right of way at a width of 50 feet which it apparently deemed a reasonable width therefor but which easement would not exist or attach unless it first be shown by com-

petent evidence that lots 20 to 22 extend at least 150 feet southerly from Front Street.

The city acquired nothing by its quit claim deed from McKenzie unless the three lots which McKenzie is now using and enjoying extend more than 130 feet south of the south boundary line of Front street. Thus neither party to this suit is entitled to a decree in the absence of evidence establishing the location of the south boundary line of lots 20, 21 and 23 in block 56 of W. J. McCormick's addition to the city of Missoula and the distance of such line from the south boundary line of West Front Street.