COMMONWEALTH *vs.* NOAH S. RICHARDSON
(and a companion case [1]).

Essex.     January 4, 1943. — April 26, 1943.

Present: FIELD, C.J., LUMMUS, DOLAN, & COX, JJ.

*Trespass. Landlord and Tenant,* Common entrance, Common hallway, Trespass, License. *Real Property,* Trespass, License, Easement, Apartment building. *License. Easement.*

One, who had entered the vestibule of an apartment building where bells communicating with the various apartments were located and thereupon, despite objections then made by the owner of the building, rang the bell of an apartment occupied by a tenant, entered the inner corridor upon the tenant's releasing the lock of the inside vestibule

---

[1] The companion case was against Fred C. Stanton.

door and interviewed the tenant in the corridor outside that apartment, was at least a licensee of the tenant in so gaining access to the inner corridor and could not properly be found guilty of having entered knowingly and without right, after having been forbidden so to do by the person in lawful control thereof, in violation of G. L. (Ter. Ed.) c. 266, § 120.

In the absence of anything to show the contrary, the letting of an apartment in an apartment building carries with it a right of way, appurtenant to the apartment and available to the tenant, his family, guests and invitees, in the common doorways, corridors, stairways and the like that afford access to the apartment.

TWO COMPLAINTS, received and sworn to in the District Court of Southern Essex on July 14, 1942.

Upon appeal to the Superior Court, the cases were heard by *Hurley*, J., a District Court judge sitting under statutory authority.

*A. A. Albert*, for the defendants.

*J. J. Ryan, Jr.*, Assistant District Attorney, for the Commonwealth.

DOLAN, J. The defendants were found guilty in the District Court under identical complaints of violation of a certain provision of G. L. (Ter. Ed.) c. 266, § 120. Upon appeal to the Superior Court the cases were heard together by a judge sitting without a jury, the defendants having waived trial by jury. Each of the defendants was found guilty, and a fine of $20 was imposed in each case. The fine was paid by the defendant Stanton, and the defendant Richardson was committed for failure to pay the fine imposed upon him. The cases now come before us on exceptions by the defendant in each case to the denial by the judge of requests for rulings as follows: "1. That upon all the law governing this case the court must find the defendant not guilty. 2. That upon all the facts in this case the evidence is insufficient to warrant a finding of guilty. . . . 8. If the court should find that the defendant was a licensee or invitee on the premises on which he is accused of trespassing, then the court must find as a matter of law that the owner of an apartment or tenement house who did not reside on the premises had no authority to revoke such license or invitation whether the same was implied or express, and

therefore, the defendant is not guilty. 9. That the statute, General Laws, Chapter 266, sec. 120, does not apply to the facts in this case, and therefore, the defendant is not guilty. 10. That the statute as construed and applied in this case operates so as to deprive the defendant of his freedom of speech, freedom of press, and freedom of worship according to the dictates of his conscience, contrary to and in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States." The fifth request of each defendant, that "upon all the evidence the defendant had an implied license to enter upon the premises here concerned," was granted. The sixth request of each defendant, as follows, "Upon all the evidence and the law the court is warranted in finding that the defendant was a person clothed with a right as a licensee or invitee to enter or remain in or upon the premises, and therefore, the defendant is not guilty," was allowed by the judge except as to the last clause, "and therefore, the defendant is not guilty." The judge was not required to pass upon the other requests of the defendants for findings of particular facts, and the motion of each, that the judge "direct a finding" for him, was properly denied by the judge. The rights of each of the defendants were properly saved by his requests for rulings, to the denial of which he excepted. *Ashapa* v. *Reed*, 280 Mass. 514.

General Laws (Ter. Ed.) c. 266, § 120, provides as follows: "Whoever, without right, enters or remains in or upon the dwelling house, buildings, boats or improved or enclosed land, wharf or pier of another, after having been forbidden so to do by the person who has the lawful control of said premises, either directly or by notice posted thereon, shall be punished by a fine of not more than twenty dollars. A person who is found committing such trespass may be arrested by a sheriff, deputy sheriff, constable or police officer and kept in custody in a convenient place, not more than twenty-four hours, Sunday excepted, until a complaint can be made against him for the offence, and he be taken upon a warrant issued upon such complaint." The complaints in the present cases, however, merely charge that the defendant

"on the 13th day of July in the year of our Lord 1942 at Lynn aforesaid, and within the judicial district of said Court, knowingly, without right, did enter upon the dwelling house of John Assies, after having been directly forbidden so to do by John Assies, he having the legal control of said premises."

There was evidence that the title to the building in question, which contained twenty-five apartments, stood in the name of one John Aysies and his wife at the time of the alleged trespasses by the defendants. Counsel for the Commonwealth and for the defendants agreed that no objection would be raised as to the form of the complaints "particularly with reference to whether or not the building . . . [in question] was the dwelling or building of John Aysies." Aysies testified, however, that he did not live in the building. On July 13, 1942, the defendants, who were ordained ministers "of Jehovah God, and as such . . . Jehovah's Witnesses commissioned to preach the Gospel," in furtherance of this work entered the vestibule of the building in question through an outer door which was open. The vestibule was a "small room having an inside door leading into the corridors where the various apartments were located . . . [and] in the vestibule there was located a series of bells, one bell for each apartment." Aysies came from the street and met the defendants in the vestibule. He told them that he was the owner of the building and said: "You're one of Jehovah's Witnesses. See that flag. Get to hell out of here." The defendants refused to leave, stating that they were ministers and had important work to do and were going to call on the tenants. Richardson testified that when they entered the building they "were calling from apartment to apartment for the purpose of bringing comfort, and showing the people of good will . . . the only means of salvation from this present world distress, and pointing out that the Theocracy is the means whereby men will receive complete deliverance and salvation from this present conflict." The defendants "had with them various books and pamphlets and a victrola with records on the Bible." Richardson, after refusing to leave the vestibule, rang the bell to suite No. 1. There was no response. He

then rang the bell to suite No. 2. Someone in that suite released the lock on the inner door of the vestibule and the defendants and Aysies walked in. The "woman in suite No. 2" told them that the lady of the house was ill and could not be disturbed. The defendants and Aysies went back to the vestibule and Richardson pressed the bells to suites three to seven inclusive "without answer." Richardson then pressed the bell to suite No. 8 on the first floor despite Aysies's objections. The lock "clicked" in the inner door of the vestibule and both defendants entered and proceeded to the entrance to suite No. 8 notwithstanding Aysies's objections and his threat to call the police. The occupant of this suite was an elderly woman. She opened the door of her apartment and listened to a record played by the defendants "outside the suite," that is, in the corridor. Aysies then went and called the police. Aysies then returned. The defendants were still playing the record and "when it stopped" they offered the woman a book entitled "Children," and seven Bible booklets. She stated that she did not believe that she wanted them, that "her eyes were very poor and she did not believe she could do that much reading." In the meantime police officer Tansey entered the building. Aysies told him he did not want the defendants in his building. Tansey "heard discussion outside suite No. 8 where he found the defendants playing a record for a woman in the suite," and heard them offering her some literature. When they finished he told the defendants that Aysies "didn't want them" in the building and asked them to leave. Richardson said "they couldn't." Then all went back to the vestibule, where Richardson explained to Tansey that they were ministers, "whereupon Tansey told the defendants if they didn't leave he would have to arrest them." Richardson "rang the bell to suite No. 9," and Tansey arrested both defendants. Aysies testified that he built the apartment house in 1925 and that at that time the tenants requested that no pedlers or solicitors be allowed and that that was a rule, but that none of the original tenants was in occupancy on July 13, 1942, and that none of the tenants then in occupancy had made any such re-

quest. There was no evidence that a notice was posted upon the building.

The judge made the following findings of fact: "The court is satisfied that on the evidence these defendants are guilty of trespass and come within the intent and purview of this chapter of the General Laws. The court finds on the evidence that this apartment house was built back in 1925 containing some twenty-five apartments, at which time the rules and regulations were laid down that no peddlers or agents or canvassers, or call them what you will, should have the right to come upon the premises. There has been a change of tenants since that time, but the court finds that there has been from that time on the implied condition that those conditions were to continue. The court finds that the owner — John Aysies is the owner of the property, that he was in control, that he made that fact known to the defendants, and despite that fact they insisted upon entering the premises, and they are trespassers within the contemplation of the statute. The court is satisfied beyond a reasonable doubt that he should find the defendants guilty."

We have already observed that the defendants were charged in the complaints not with remaining in or upon the premises in question after having been forbidden so to do, but only with having entered "knowingly, without right . . . upon the dwelling house of John Assies, after having been directly forbidden so to do by John Assies, he having the legal control of the premises." The two acts thus forbidden by the statute are expressed in the disjunctive, and violation of either is a crime. One may be guilty of one, or of the other, or of both, but one may not be found guilty of one that is not the subject of the complaint against him. The question, therefore, is whether the evidence warrants a finding that the defendants entered the premises in question after having been forbidden so to do by one having the legal control of the premises.

We are of opinion that the evidence would not warrant a finding that the defendants entered the vestibule of the building after having been forbidden by Aysies "so to do."

They were already in the vestibule when confronted by Aysies. They had entered by the open outer door of the vestibule. But apart from this we think that in supplying the means of seeking access to the tenants by way of the bells which could be rung in the vestibule, an implied license was granted to the defendants and all others engaged in lawful pursuits to make use of them for the purpose of seeking an interview with the tenants. The purpose of the defendants was to spread the teachings of their religious faith. To go from house to house for that purpose was a lawful pursuit, and one in the exercise of which the defendants could not be restrained except in so far as those having the legal control of the premises, that is, the right to grant or deny them admission, should see fit to deny admission. See *Largent* v. *Texas*, 318 U. S. 418. Without intimating that the rule would be otherwise in the case of "peddlers or agents or canvassers" pursuing their business lawfully, we think that the defendants, who were engaged in seeking to spread their religion, could not be found properly to come within the category of "peddlers or agents or canvassers." It has been held in many cases that ordinances regulating the conduct of such persons cannot be extended to cover the activities of ministers who go about on the streets or from house to house preaching or distributing or selling literature relating to their faith. *Lovell* v. *Griffin*, 303 U. S. 444. *Cantwell* v. *Connecticut*, 310 U. S. 296. *Largent* v. *Texas*, 318 U. S. 418. *Jamison* v. *Texas*, 318 U. S. 413. *Thomas* v. *Atlanta*, 59 Ga. App. 520. *Cincinnati* v. *Mosier*, 61 Ohio App. 81. *State* v. *Stark*, 196 La. 307, 310, 311. *State* v. *Meredith*, 197 S. C. 351. The statute with which we are concerned in the present case cannot properly be construed to restrict the defendants from going from house to house in pursuit of their religious calling. It does not purport to do so. Its only purpose is to protect the rights of those in lawful control of property to forbid entrance by those whom they are unwilling to receive, and to exclude them if, having entered, those in control see fit to command them to leave. Properly applied the statute does not violate the Fourteenth Amendment to the Constitution of the United States.

Whether the defendants entered the common passage-ways of the building in question in violation of the statute depends upon the extent of the control of the landlord thereof, and that of the respective tenants. It is settled that, when a landlord lets property to be occupied by several tenants, although he retains for certain purposes control of the common doorways, passageways, stairways and the like, he grants to his tenants a right of way in the nature of an easement, appurtenant to the premises let, through those places that afford access thereto. *Hart* v. *Cole*, 156 Mass. 475, 476. *Tremont Theatre Amusement Co.* v. *Bruno*, 225 Mass. 461, 463. *Melville Shoe Corp.* v. *Kozminsky*, 268 Mass. 172, 180. This is necessarily so since "the grant of any thing carries an implication, that the grantee shall have all that is necessary to the enjoyment of the grant, so far as the grantor has power to give it." *Salisbury* v. *Andrews*, 19 Pick. 250, 255. It is also settled that this easement extends to the members of the tenant's family and to all his guests and invitees. *Bacon* v. *Jaques*, 312 Mass. 371, 373, and cases cited.

It is unnecessary to decide whether the evidence in the case at bar would warrant a finding that, in gaining access to the tenants of the apartments in question, by the act of the occupants in releasing the lock on the inner vestibule door, the defendants were implied invitees of the tenants, since we are of opinion that upon the evidence no other finding properly could be made than that, in gaining admission to the inner corridors or halls where the apartments in question were located, the defendants were at least licensees of the respective tenants who afforded them the opportunity to enter and state their mission. In *Lakin* v. *Ames*, 10 Cush. 198, 220, the court said: "there are cases . . . where the law will imply a license, in the absence of any proof of direct authority, from the necessities of individuals and the usages of the community. Thus it has been held that the entry upon another's close, or into his house, at usual and reasonable hours, and in a customary manner, for any of the common purposes of life, cannot be regarded as a trespass." "A license may be implied from

the habits of the country." *McKee* v. *Gratz*, 260 U. S. 127, 136. See also *Plummer* v. *Dill*, 156 Mass. 426, 428; *Hart* v. *Cole*, 156 Mass. 475, 479; *Riley* v. *Harris*, 177 Mass. 163, 164; *Norris* v. *Hugh Nawn Contracting Co.* 206 Mass. 58; *Larmore* v. *Crown Point Iron Co.* 101 N. Y. 391.

In the instant case the defendants were lawfully in the vestibule, where the means for communicating with the respective tenants had been installed that the tenants might at will release the lock and give access to those seeking to see them. Of course they could decline to do so if they saw fit. The releasing of the lock we think must be held to have at least conferred upon the defendants a license or permission to enter the inner halls, to approach the apartments in question, and, if permitted by the tenant, to state the object of their call. This was a license for the tenants to grant or withhold, one embraced within the easement conferred upon them by the letting, one which subsisted until revoked by the tenants, and one which the tenants could exercise notwithstanding objections of the landlord, who could not revoke the license any more than he could an invitation extended by the tenant to one calling upon any legitimate business.. *Freeman* v. *Wright*, 113 Ill. App. 159, 161. *State* v. *Lawson*, 101 N. C. 717. The response to the bells in the case at bar and the releasing of the lock of the inner vestibule door constituted a license or permission to the defendants to enter, to identify themselves, and to disclose the purpose of their visit. In so entering we think that it could not be found rightly that they had entered after having been forbidden "so to do" in violation of the statute.

We are not called upon to decide whether the landlord could properly intervene to prevent the conduct of religious exercises in the halls or corridors outside of apartment No. 8, where the defendants spoke of their religion and played records of a religious character, since they are complained of, not for remaining on the premises after having been requested to leave by the person in lawful control, but only for entering them after having been forbidden to do so by him. We think that on the evidence it must be held that

their entry was not in violation of the statute, and that there was error in the denial of their requests that on all the evidence a finding of not guilty was required. The entry in each case will be

*Exceptions sustained.*
*Judgment reversed.*
*Judgment for the defendant.*