451 So.2d 505 (1984)
Michael K. HYNES, Appellant,
v.
CITY OF LAKELAND, Florida, a Florida Municipal Corporation, William Bruce Bull, Harold R. MaGee, and Lakeland Flying Service, Inc., Appellees.
No. 82-2840.
District Court of Appeal of Florida, Second District.
May 4, 1984.
Rehearing Denied June 6, 1984.
*507 Philip O. Allen of DeVane, Munson & Allen, Lakeland, for appellant.
Mark N. Miller, City Atty., and Ernest M. Jones, Jr. of Jacobs, Valentine, Groseclose, McCarthy & Vining, P.A., Lakeland, for appellees.
RYDER, Judge.
Appellant Michael Hynes, plaintiff below, seeks review of the order granting final summary judgment in favor of appellees William Bull, Harold MaGee, and the City of Lakeland (hereinafter City). We reverse.
On October 21, 1975, appellant became the possessor of the leasehold interest in the property situated directly beneath hangar # 3 located at Lakeland Municipal Airport and also became the owner of the hangar building itself. Appellant acquired these interests pursuant to an October 21, 1975 purchase and sale agreement (hereinafter Agreement) and companion lease (hereinafter Lease) entered into between himself and Lakeland Flying Services, Inc. (hereinafter LFS), a Florida corporation.[1] Hynes' leasehold estate was carved out of LFS's larger estate which is situated to the south and east of hangar # 3 and also located between hangar # 3 and the airport taxiway that connects with the other taxiways and runways. Part of LFS's leasehold estate in existence when the Agreement and Lease were executed included property designated in an earlier 1962 lease for use as an aircraft access ramp between its hangar (# 2) and the taxiways. This apparently unpaved access ramp is adjacent to a large portion of the eastern border of hangar # 3 according to the diagram attached to the 1965 lease and incorporated by reference into the October 1975 Lease.[2] *508 The City is the owner and operator of the airport and is the original lessor of all property involved in this case.
In the October 1975 Agreement, LFS promised to sell to Hynes the structure known as hangar # 3 and also promised to assign to him the leasehold interest in a 1965 lease (which covered the property underlying hangar # 3), including all addendums and the August 29, 1975 extension relating to that lease.[3] In particular, the Agreement provides in part: "From and after the date of closing, the seller shall have joint use of the ramps, runways, taxiways, and other facilities provided for aircraft and the public at the Lakeland Municipal Airport." Another provision states that it "shall be binding upon and inure to the benefit of the parties hereto, their heirs, successors, assigns, and personal representatives." The companion Lease executed thereafter assigned to Hynes the interest in the 1965 lease along with the addendums and the extension and also incorporated by reference the terms and conditions of these documents.[4]
In October 1980, appellant filed a multicount complaint against the City and LFS, seeking damages and declaratory and injunctive relief. The underlying basis for the suit concerns appellant's claim that, under the October 1975 Agreement and companion Lease, he and his sub-lessees have either express or implied easements over property leased by LFS to move aircraft between hangar # 3 and the public taxiways and to move motor vehicles between hangar # 3 and the public road leading to the airport. After some discovery had occurred, appellant in April of 1982, filed a separate complaint against Bull and MaGee for damages, alleging each individual had intentionally interfered with his advantageous business relationships and each had conspired with the City and the corporation to intentionally interfere with the same business relationships. Bull and MaGee purchased LFS' corporate stock, assets, interests, and obligations in April 1977.
Subsequently, the case was removed to federal court by LFS and the City; however, the federal court remanded the matter back to state court after dismissing the one count of the complaint which alleged a federal cause of action. A second amended complaint was filed in state court against LFS and the City. This amended complaint contained the same counts and claims as the initial complaint plus an additional count.[5]
In Count I, appellant essentially alleged that LFS breached the October 1975 Agreement and companion Lease with him by refusing, beginning in the summer of 1977, to allow him or his sub-lessee at the time "the right of ingress or egress" for both aircraft and motor vehicles across express *509 easements provided for by these agreements which adopted the terms and conditions of the original 1965 lease. In Count II, appellant alternatively sought, in accordance with section 704.01(1), Florida Statutes (1979), to establish implied easements by "way of necessity" over property leased to LFS in order that he be able to beneficially use the leasehold estate (hangar # 3) conveyed to him by LFS. With respect to Count III, appellant sought declaratory and injunctive relief to define and protect his express easements or the alternative "ways of necessity." He also requested that the trial court enjoin both LFS and the City from interferring with his right of access between hangar # 3 and the airport taxiways and runways and between hangar # 3 and the public road adjoining the airport.
In Count V, appellant sought damages against the City and claimed it breached the terms of the 1965 original lease and extension, the rights of which had been assigned to him by the October 1975 Agreement and Lease. In particular, appellant alleged the City breached the agreements by leasing to LFS in July of 1980 property over which he had either express or implied easements. Finally, as for Counts VI and VII, appellant sought damages against LFS and the City for intentional interference with his advantageous business relationships and for conspiracy to intentionally interfere with those same relationships.
Sometime between the filing of the second amended complaint and June 23, 1982, LFS apparently filed a voluntary petition for bankruptcy and was no longer subjected to the state proceedings.[6] On July 28, 1982, an amended complaint for damages was filed against Bull and MaGee. This complaint alleged that Bull and MaGee intentionally interfered with his advantageous business relationships by physically obstructing access to his leasehold; threatening to physically obstruct his access; and informing third persons that neither he nor his assignees have rights of access to hangar # 3 when in fact they were aware that the rights inuring from the 1965 lease and extension had been assigned to him.
After discovery was completed, the trial court, on September 27, 1982, set a trial date of November 27, 1982. However, on November 16, appellees Bull and MaGee moved for summary judgment based upon the pleadings, depositions, exhibits filed, and Bull's affidavit. Between November 18 and December 10, the parties discussed the contents of a pretrial stipulation. On December 10, a stipulation was filed, although that stipulation did not include any agreed-upon facts.
Thereafter, and prior to entry of the trial court's order granting the motion for summary judgment, the parties orally stipulated that the court and not a jury would determine whether either express or implied easements existed in appellant's favor. Although that stipulation was not recorded, both parties have indicated to us that the stipulation did not address the question of "when the trial court could rule upon the easement questions." Nevertheless, on December 10, after the summary judgment hearing (which was also unrecorded), the trial court entered an "Order for Final Summary Judgment."[7] In that order, the court made the following pertinent findings:
2. The parties stipulated before the Court that the determination of whether the Plaintiff had an express or implied easement would be for the Court to decide and would not be submitted to a jury.
3. The plaintiff relies upon the language contained at Paragraph 2 of an October 21, 1975 Agreement for Sale and Purchase and the language contained in a document, dated October 15, 1975, that purports to be a corporate resolution as *510 the source of his entitlement to an express easement. Neither the contract nor the purported resolution clearly expresses the intention of the parties to create an express easement as further evidenced by the testimony of Robert C. Branson, Arthur Jones and Stanley Pivariski, parties to the October 21, 1975 transfer, neither do either of the documents clearly define the scope and extent of the alleged easement, and neither were executed with the formalities required for the grant of an easement.
4. As a matter of law, from the facts as established by the pleadings, depositions, answers to interrogatories, and affidavits, there is no implied easement, as defined by 704.01(1), Florida Statutes, available to the plaintiff over lands leased to the defendant, LAKELAND FLYING SERVICE, INC., inasmuch as 704.01(1), Florida Statutes, does not provide for aircraft access to and from public runways.
On appeal, appellant contends the trial court erred in determining the easement questions at the summary judgment stage and in ruling that (1) the 1975 purchase and sale agreement and related documents do not create any express easements and (2) section 704.01(1), Florida Statutes (1981), does not provide for a "way of necessity" for aircraft access to and from public taxiways and runways.
We hold the trial court first committed error in deciding the easement issues prior to the time appellant had an opportunity to present his case-in-chief before the court. The oral stipulation, according to both parties and the language of the trial court's order, simply stated the trial court and not a jury would determine whether express or implied easements existed in appellant's favor. The stipulation did not, as admitted by the parties, indicate the court could resolve any genuine issues of material fact at the summary judgment stage and based solely upon facts derived from the court file. In short, we hold the stipulation simply provided there would be a nonjury trial as to the easement issues. Such an agreement between litigating parties is consistent with the spirit of Florida Rule of Civil Procedure 1.430(c). Accordingly, absent an express agreement that the court was to weigh disputed facts and determine the easement issues at the summary judgment stage, we will not deprive appellant of his right to present evidence and live testimony in open court. A party does not waive his "day in court" merely by agreeing to a nonjury trial. Thus, only after appellant has had the opportunity to present his case-in-chief can the court resolve the questions contained in this stipulation. Fla.R.Civ.P. 1.480(a). Therefore, the case must be remanded for nonjury trial for a determination of the easement issues in accordance with the dictates of this opinion.
In reaching its conclusions on remand, the trial court should be aware we find genuine issues of material fact exist as to whether appellant has an express easement for aircraft access between his hangar and the taxiways and runways and whether appellant has an express easement for vehicular access between his hangar and the public road adjoining the airport facilities. Holl v. Talcott, 191 So.2d 40 (Fla. 1966). It is well-settled that an express easement can be created in favor of a leasehold estate at the time the contracting parties enter into a lease agreement. Robinson v. Feltus, 68 So.2d 815 (Fla. 1953). Moreover, a contract may operate as a grant of an easement if it is necessary to give the agreement that affect in order to carry out the parties' intent. Kingdon v. Walker, 156 So.2d 208 (Fla.2d DCA 1963); Jabour v. Toppino, 293 So.2d 123 (Fla. 3d DCA 1974).
In the case sub judice, it is the October 1975 Agreement and companion Lease (which we have noted incorporated by reference the terms and conditions of the 1965 original lease) that would form the basis of any possible express easements. Therefore, a question to be answered by the trial court, after reviewing the evidence received during the nonjury trial, is whether either or both of these instruments executed *511 by LFS and appellant actually created an express easement for aircraft ingress and egress between hangar # 3 and the public taxiways and runways and/or an express easement for motor vehicle access between hangar # 3 and the public road adjoining the airport.[8]
We observe that no particular form and language are necessary to create an easement; rather, any words clearly showing the intention of the parties to create a servitude on a sufficiently identifiable estate is sufficient. Seaboard Air Lines Railway Co. v. Dorsey, 111 Fla. 22, 149 So. 759, 761 (1933). See generally 20 Fla. Jur.2d Easements § 14 (1980); 2 G. Thompson, Thompson on Real Property, § 332, p. 111-112 (1980 repl.). The failure of the parties to precisely describe the boundaries of the easements does not automatically render a transfer of the interest void. Kotick v. Durrant, 143 Fla. 386, 196 So. 802 (1940). The trial court can look to the intention of the parties to determine the location and extent of any purported easements. Kingdon. In the instant case, the parties' intentions as to the precise description of any express easement can be ascertained by considering not only the terms of the October 1975 Agreement and Lease but also "the conditions and purposes for which the easement was intended," "the situation of the parties and the property, the circumstances at the time the instrument is executed, the practical construction as evidenced by the conduct and admissions of the parties themselves, and by the single `contemporary usage with respect to the subject granted.'" Kingdon at 213.[9]
Moreover, our examination of the October 1975 Agreement and Lease convinces us that each satisfies the statute of frauds and comports with the technical formalities necessary to create express easements. Burdine v. Sewell, 92 Fla. 375, 109 So. 648 (1926). Furthermore, the alleged easements would not be void because the agreement and lease have not been recorded; recordation only protects the easement holder from having a servitude extinguished by subsequent purchasers of lessors of the servient estate. Burdine. In the case below, the sale and transfer of LFS's stock from previous stockholders of LFS to appellees Bull and MaGee in April of 1977 did not change the fact that LFS still held the leasehold interest in the burdened estate and remained obligated to fulfill the terms of the October 1975 Agreement and Lease executed between the corporation and appellant.
In addition to holding the trial court committed error by ruling at the summary judgment stage that no express easements were created by the October 1975 Agreement and Lease, we hold the trial court also committed error in ruling that, as a matter of law, a "way of necessity" for aircraft access could not be established under section 704.01(1), Florida Statutes (1981). Neither party has directed our attention to a case specifically on point, and our independent research indicates to us the issue seems to be one of first impression.
Section 704.01 provides, inter alia:
The common law rule of an implied grant of a way of necessity is hereby recognized, specifically adopted, and clarified. Such an implied grant exists where a person has heretofore granted or hereafter grants lands to which there is no accessible right-of-way is presumed to have been granted or reserved. Such an implied grant or easement in lands or estates exists where there is no other reasonable and practicable way of egress, or ingress and same is reasonably necessary for the beneficial use or *512 enjoyment of the part granted or reserved. An implied grant arises only where a unity of title exists from a common source other than the original grant from the state or United States... . (Emphasis supplied).
As an initial point, we agree a leasehold is capable of supporting a "way of necessity." Commonwealth v. Richardson, 313 Mass. 632, 48 N.E.2d 678, 146 A.L.R. 648 (1943); Alabama Fuel & Iron Co. v. Courson, 212 Ala. 573, 103 So. 667 (1925); Patterson v. Graham, 140 Ill. 531, 30 N.E. 460 (1892); Powers v. Harlow, 53 Mich. 507, 19 N.W. 257, 51 Am.Rep. 154 (1884); Southex Trading Co. v. Piankay Realties, Inc., 59 N.Y.S.2d 362 (Sup.Ct. 1946). This concept has been succinctly stated as follows:
Where land is leased and is so situated that access to it from the highway cannot be had except by passing over other land of the lessor, the lessee becomes entitled to a right to pass over the land of his lessor for the purpose of reaching the highway and returning to the leased land.
2 G. Thompson, Thompson on Real Property, § 362, p. 393 (1980 repl.). The policy of preventing the idleness of real property is no less important in landlord-tenant situations, especially in light of the fact that many leases are for extended periods of time and most leases contemplate a specific use.
Consequently, the main issue before us is whether a "way of necessity" can be recognized under section 704.01(1) where a lessee properly receives a leasehold estate which is intended to be used for aircraft storage, maintenance, flying instruction, and flying services, but the property is so positioned that access to it from public airport taxiways and runways by aircraft is not possible except by traveling over a portion of the lessor's estate. We believe an affirmative answer to this question is in order upon a plain and ordinary construction of section 704.01(1) and upon examining the policy underlying the recognition of the "way of necessity," especially when we apply the principle to a present day problem relating to easements and the inaccessibility of property. Cf. Redman v. Kidwell, 180 So.2d 682, 684 (Fla. 2d DCA), cert. denied, 188 So.2d 806 (Fla. 1965), and appeal dismissed 189 So.2d 631 (Fla. 1966).
First, section 704.01(1) does not restrict the application of the doctrine to any particular type of "lands or estates." Additionally, the statute provides no limitation on the nature or physical makeup of the "way" sought to be imposed. Moreover, we hold, applying the "way of necessity" principle to this modern factual setting, that public airport taxiways and runways are the equivalent of public roads or highways. Therefore, their presence abutting the proposed servient estate can satisfy the requirement that the party seeking to impose the "way" must ultimately be in need of access to a "public road." Hanna v. Means, 319 So.2d 61 (Fla.2d DCA 1975). It cannot be seriously contended that a public airport taxiway or runway or other access route provided for aircraft movement is significantly different in physical character or function than any public road, street or highway. Both public roads and public taxiways and runways are officially designated, created, and maintained passageways and thoroughfares which are integral parts of our entire transportation system and are specifically provided for the movement of people and property.
Very important in our decision to recognize that a "way of necessity" might be proper in a case such as the present one is the policy underlying section 704.01(1) and its common law predecessor. The main focus of the statute and common law is whether a route or path for egress and ingress between a purchaser's or lessee's estate and a publicly-designated passageway is necessary for "the reasonable, practicable, convenient, and comfortable enjoyment of the property" sold or leased. E.g., Redman at 684. Accord, Star Island Associates v. City of St. Petersburg, 433 So.2d 998 (Fla. 2d DCA 1983); Reyes v. Perez, 284 So.2d 493, 496 (Fla. 4th DCA 1973). In particular, with respect to facts *513 analogous to this case, the question can be posed as follows: whether a refusal to recognize a "way of necessity" renders the shut-in property (hangar # 3) incapable of being beneficially used and enjoyed as contemplated by the October 1975 Lease? This is one of the questions which the trial court may have to answer on remand.
Therefore, because we hold a "way of necessity" can be imposed to create a right of ingress and egress to a public airport's taxiways and runways from an airplane hangar, and because we find there are genuine issues of material fact with respect to this central issue, we direct the trial court on remand, if it concludes that no express easement for aircraft access exists, to determine whether the facts of this particular case require a "way of necessity" to be recognized. The trial court must look to the requirements of section 704.01(1), this opinion, and the cases construing the statutory provision when making its determination. See Star Island Associates; Dinkins v. Julian, 122 So.2d 620 (Fla. 2d DCA 1960). Furthermore, should the trial court rule that appellant is entitled to a "way of necessity," we note that section 704.01(1) "clearly contemplates that such a way of necessity be of reasonable length and width, consistent with the needs of the owners or lessees of the lands that are hemmed in." Hayes v. Reynolds, 132 So.2d 781, 782 (Fla.App. 1961).
As a final point, we mention the trial court's order granting summary judgment did not address whether appellant was entitled to a "way of necessity" for motor vehicles between hangar # 3 and the public road adjoining the airport facility. Accordingly, because we find genuine issues of material fact exist as to this issue as well, the trial court is further directed, if it finds an express easement does not exist with respect to this matter, to determine whether section 704.01(1) requires that a "way of necessity" be recognized and imposed over property leased to LFS.
REVERSED and REMANDED, with directions, for further proceedings consistent herewith.
OTT, C.J., and LEHAN, J., concur.
NOTES
[1] LFS, the assignee of the original lessee who executed a 1965 lease with the City, was entitled under that lease to assign the property underlying hangar # 3 (hangar # 3 was not in existence at the time of the 1965 lease). See note 4.
[2] LFS received these parcels of property as a result of it receiving the assignment of the interest in the 1962 lease between the original lessee and the City.
[3] The extension expanded the term of the original lease until June 21, 1985.
[4] In this respect, the 1965 lease provides in relevant portions:

... .
2. The Lessee shall have the right ... to construct or erect upon said premises above described, at its own expense, buildings known as T-Hangars or hangar buildings... .
... .
11. It is further mutually agreed and understood by the parties hereto that the premises leased shall be used for aircraft storage, repair, overhaul, aircraft and parts sales and service, flight instruction, aircraft charter, passenger flights, aerial photos and surveys, office space for the Lessee only, or other aviation purposes authorized by the Lessor.
... .
13. It is understood and agreed that the Lessee shall have the joint use of the ramps, runways, taxi-ways and other facilities provided for aircraft and the public at said airport.
... .
15. The Lessee may assign or sublet the premises....
... .
22. On the 1st day of March 1962, the parties hereto entered into a lease agreement covering Hangar No. 2....
23. It is mutually understood and agreed that the Lessee shall have the right and option to renew this lease for an additional ten year period... .
[5] Apparently, the second amended federal complaint was filed as the state complaint with the understanding that the dismissed federal count (# 4) was to be given no effect by the parties or the trial court.
[6] It is unclear from the record as to the present status of LFS after it filed bankruptcy; however, we note the effect of the automatic stay provisions of 11 U.S.C. § 362 (the Bankruptcy Code).
[7] According to the trial court's order, the City orally moved for summary judgment at the summary judgment hearing on the same grounds argued by Bull and MaGee.
[8] Even if LFS did not possess the leasehold interest in all the property situated between hangar # 3 and the public road at the time the Agreement and Lease were executed, the doctrine of after-acquired title might apply because of the July 22, 1980 lease between the City and LFS. Kingdon at 217.
[9] With respect to the alleged express easement for aircraft access, the trial court should consider, along with any other admissible evidence, the diagram attached to the 1965 lease which was incorporated by reference into the October 1975 Agreement and Lease.